State vs. Jackson.

No. 10,950.

THE STATE OF LOUISIANA VS. WILLIAM JACKSON.

In order to excuse a homicide the accused must be under the belief that his life is in danger, or he fears some great bodily harm may be inflicted upon him, and said belief must be the result of some overt act or hostile demonstration made by the deceased against the accused.

In attacking a witness' general character for infamy, the investigation can not be restricted so as to confine it to particular acts or to particular associates.  It must be as to his whole conduct and character, so as to establish such moral depravity that no one would be justified in believing his sworn statement uncorroborated.

Whether a witness who was not connected with the homicide; who was with the deceased at the time of the homicide, was or was not a dangerous character, is immaterial, and no evidence of his character in this respect is admissible.

Fear that one's life is in danger will not excuse a homicide in the absence of an overt act or hostile demonstration on the part of the deceased.

When the judge charges substantially what the defendant requires in a special charge, it is sufficient.

APPEAL from the Thirteenth District Court, Parish of St. Landry.  Lewis, J.

W. H. Rogers, Attorney General, for the State, Appellee.

Chas. W. Du Roy for Defendant and Appellant.

The opinion of the court was delivered by

McENERY, J. The defendant was indicted for murder, tried and found guilty without capital punishment, and sentenced to imprisonment at hard labor for life, from which judgment he has appealed.

The first bill of exceptions was taken on the refusal of the trial judge to allow the following question to be propounded to a witness: " Was Ivory Guidry, the deceased, a man capable of carrying out such threats."

The trial judge, in his statement appended to the bill, says: "That the accused shot the deceased down in the public road and without even the slightest effort on his part to make an assault upon the accused. The accused watched deceased while passing the accused's house in the public road and fired twice across a fence about ten paces distant, killing deceased almost instantly, while deceased was standing still, being halted by accused and making no demonstration whatever against him."

It appears from the statement that the deceased made no hostile demonstration against the defendant. It is immaterial, therefore, what were the previous threats of the deceased against the defendant.

They are inadmissible unless a proper foundation is first laid by evidence of some overt act or hostile demonstration made by the deceased at the time of the fatal assault upon him.

The ability of the deceased, therefore, to execute threats when he had shown no intention by any overt act to carry them out, is inadmissible. State vs. Demareste, 41 An. 617; State vs. Paterno, 43 An. 514.

There was no demonstration made by the deceased which justified the defendant in believing that his life was in imminent danger. · · State vs. Cosgrove, 42 An. 755.

The second bill was reserved to the ruling of the trial judge in refusing the following question to be propounded to the witness, Moreau, in relation to the character of Jeanbette, a witness for the prosecution: " Do you know the man Jeanbette, and is he not a man who lives and associates with criminal people?"

" Isn't it a fact that his principal associates are lewd and abandoned women?"

This question was asked for the purpose of impeaching the witness' general character.

11

The District Attorney urged several objections to the questions, any one of which we think was good.

The following objections are conclusive:

1. The question was leading, suggesting the answer, and that the general reputation of the witness only can be inquired into.

The question was leading, and, therefore, properly ruled out.

In the case of the State vs. Parker, 7 An. 83, this court had occasion to review the law, and to determine the extent to which the investigation of the witness' character can be gone into. In that case the question was as to the infamous character of the witness, which was compounded of a notorious character for acting falsely and fraudulently, of extorting money by force and cheating from the unwary and feeble, and of living among low and abandoned women. That he was idle, dissolute and profligate, and had no means of support, and no other means of obtaining money than those set forth. The witnesses swore that although they could not say that the impeached witness had formed any character as to lack of truth, and was false in oath and words, yet from his vices and general bad character they believed he was unworthy of credit, and they would not believe him under oath.

In the opinion this court said: " All agree that a man proved by respectable testimony to possess the character described in the bill of exception under consideration would not be entitled to equal credit with a pure and virtuous witness; yet such a man, unless proof is allowed, would stand as fair before a jury as one of the most spotless character."

The inquiry, therefore, must be into the general character of the witness, and not permitted to run into collateral facts and particular inquiries as to any particular act or any particular associates.

In other words, the inquiry into the general character must be of that kind which will show such moral turpitude in the witness that no one would be justified in believing his uncorroborated statement.

The inquiry into the witness' character in the instant case did not tend to show that he was infamous, but that his associates were taken from a certain class of people. The inquiry was restricted, and, therefore, did not come within the reasons stated in the case quoted.

Bill No. 3 was taken to the exclusion by the judge of the following question to a witness:

" Was Ivory Guidry, deceased, a dangerous man, and was he a man capable of carrying threats into execution ? "

The reason stated in sustaining the ruling of the trial judge on bill No. 1 will apply to this.

Bill No. 4 was reserved to the question, " What is Jeanbette's general reputation for peace and quiet ?   Isn't he a notoriously dangerous man ? "

This question is also leading, and objectionable on that account.

Jeanbette was a witness.   He was in no way concerned in the homicide, and, therefore, the question was irrelevant.

Bill No. 5 is to the ruling out of threats made by the deceased prior to the homicide.   There was no overt or hostile demonstration made by the deceased; therefore, the testimony sought to be introduced was properly rejected.   This bill has also been disposed of by the reason given in sustaining the ruling of the trial judge on bills 1 and 3.

Bill No. 6 was taken to the refusal of the trial judge to charge the jury as requested by defendant.

The charge requested was :    (1) " If a man reasonably and fairly believes his life is in imminent danger, he is excusable in killing his adversary, although it afterwards appear that there was no danger."

The imminent danger in which the defendant imagines or believes himself to be must result from some act of the deceased.   It is then a question of fact for the jury to find whether the demonstration was of such a character as to impress the accused with a belief that his life was in danger, or that he feared great bodily harm would be inflicted upon him.

The law does not excuse a homicide, coolly planned and deliberately executed, committed when the deceased was making no demonstration whatever, and was unarmed, on the public road.

(2) " That if the jury had any reasonable doubt on any material point of the case, they were bound to give the benefit of such doubt to the accused."   Instead of the charge requested by defendant, the trial judge instructed the jury " that they must be satisfied beyond a reasonable doubt that the State had made out its case as to every constituent element of the crime charged, each element thereof being fully explained."

The charge was fair, and a concise statement of the law. The defendant had no cause to complain of it.

Judgment affirmed.