(41 South. 550.)

No. 16,131.

STATE v. CRAFT.

(June 18, 1906.)

WITNESSES—IMPEACHMENT—BIAS.

Evidence was admissible, in behalf of the accused in a murder case, to prove that a female witness for the state, who denied the fact on her cross-examination, was the concubine of the deceased, for the purpose of showing the animus of the witness.

[Ed. Note.—For cases in point, see vol. 50, Cent. Dig. Witnesses, §§ 1193, 1201.]

(Syllabus by the Court.)

Appeal from Twentieth Judicial District Court, Parish of Terrebonne; Louis P. Caillouet, Judge.

Hilary Craft was convicted of murder, and appeals. Reversed.

Suthon & Wuszlow, for appellant. Walter Guion, Atty. Gen., and Whitmel Pugh Martin, Dist. Atty. (Lewis Guion, of counsel), for the State.

LAND, J. The accused was indicted for the murder of one Will Bennett, was duly tried and found guilty "without capital punishment."

The accused appeals from the sentence of life imprisonment, and relies for reversal on three bills of exception.

## Bill No. 1.

William Bennett, the deceased, lived with Paul Jackson and his wife, Sarah Jackson, and slept in a separate bed in the same room, a circumstance not unusual among colored people of their class.

Paul Jackson and Sarah Jackson were eyewitnesses to the homicide which was committed in their dwelling.

On cross-examination, Sarah Jackson was asked whether she was not the concubine of William Bennett. This she denied, and counsel for the accused subsequently placed a witness on the stand for the purpose of proving the intimate relations existing between Sarah Jackson and the deceased.

Objection was made by the state, and thereupon counsel for the accused declared that their purpose was to show the existence of such a relation, the infamous character of Paul Jackson and Sarah Jackson, the bias and motive of their testimony against the accused, their depravity and want of moral accountability, their animus, and want of credibility. The objection was sustained by the trial judge because it was not permitted to attack the character or credibility of a female witness by assailing her character for chastity.

Counsel for the accused cites State v. Johnson, 48 La. Ann. 438, 19 South. 476, in which it was held that the state, on cross-examination of a witness for the defendant, could ask her "if she was not his concubine," for the purpose of affecting the weight and credibility of her evidence.

The state cites the case of State v. Jackson, 44 La. Ann. 160, 10 South. 600, in which it was held that, in attacking a witness' general character for infamy, the investigation cannot be restricted so as to confine it to particular acts or to particular associates.

The state also cites the case of State v. Hobgood et al. 46 La. Ann. 855, 15 South. 406, in which it was held that a female witness for the state could not be impeached by proof of bad character for chastity or that she was a prostitute.

The state also cites the case of State v. Baudoin, 115 La. 837, 40 South. 239, to the same effect.

It is evident that in none of these last three cases was it attempted to prove the relations between the witness and the defendant or the accused, as in State v. Johnson, supra.

In the case at bar the accused offered to prove that the witness was the concubine of the deceased and therefore was prejudiced or biased against the defendant.

It would have been competent for the accused to have proven that the witness was related by blood affinity to the deceased, or was connected with him by other legitimate ties.

We do not see how an illicit connection can change the rule. The state argues that the matter inquired about was collateral or immaterial.

Mr. Rice, in his treatise on Evidence (volume 3, § 227), says:

"The general rule that a witness cannot be impeached by contradicting him as to collateral matters is well understood. But it has been held that the feelings of the witness and his disposition to tell or conceal the truth, in a particular suit in which he is called, are not collateral in the meaning of this rule."

Gillet, in his work on Indirect and Collateral Evidence (page 139, § 91), says:

"It is not, however, regarded as collateral to show prior ill feeling, interest, or other matter calculated to show the animus of the witness, and substantive evidence can be introduced on this subject, as it goes to the root of the question as to whether the witness' testimony is true."

Wigmore, on Evidence, states that extrinsic evidence is always admissible to show "emotional incapacity" that is partiality of hostility resulting from bias, interest, or corruption." Sections 940, 943.

The same writer says:

"We infer partiality from the circumstance that the witness is a party in the cause, or is a brother of a party, or has on some occasion expressed hostility to the opponent, or has received money for his testimony."

We therefore think that the testimony proffered was clearly admissible for the purpose of showing the animus of the witness.

### Bill No. 2.

This exception relates to the alleged misconduct of a juror, and need not be considered, as the case will be remanded, and the incident is not likely to recur.

### Bill No. 3.

This exception was reserved to the refusal of the trial judge to admit evidence to show prior threats and the dangerous character of the deceased, for the reason that the evidence adduced did not in his opinion establish any overt act on the part of the deceased at the time of the killing.

As we cannot anticipate what evidence will be adduced on this point on the new trial, it is unnecessary to pass on this bill of exception.

It is therefore ordered that the verdict and sentence appealed from be annulled, avoided, and reversed, and it is now ordered that this cause be remanded for a new trial according to law and the views herein expressed.