(43 South. 159.)

No. 16,361.

STATE v. PELLERIN.

(Feb. 4, 1907.)

1. EMBEZZLEMENT—WHAT CONSTITUTES.

Embezzlement is not a common-law crime, but one created by a statute of Louisiana. In determining whether the acts charged to have been committed constitute embezzlement, the terms of the statute are controlling.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Embezzlement, § 2.]

2. SAME.

The term "embezzle" used in the statute is one which has a well-recognized and accepted common meaning. It is a broader term than "larceny," but not exclusive of it. "Embezzling" is the wrongful and felonious appropriation to himself by a servant, employé of a civil corporation, or other person designated in the statute, of property intrusted to him by his employer.

3. SAME—EVIDENCE.

Under an indictment, which charges a defendant, in terms legally sufficient under the statute creating embezzlement, with the commission of acts which bring him within the grasp of the statute, the jury may find him guilty of embezzlement, though the acts charged to have been committed would be characterized legally as larceny, if not committed by him in violation of the fiduciary relations existing be-

tween himself and his employer. Violation of these fiduciary relations transforms his acts of wrongful and felonious appropriation from acts of larceny into acts of embezzlement under the statute.

4. INDICTMENT — SUFFICIENCY — STATUTORY CRIME.

In charging a person in an indictment with a statutory crime, the use of the identical words of the statute is not sacramental. Any words may be used which will unequivocally convey the meaning of the statute, so that the defendant cannot be misled as to the charge he is to answer. He must be fully informed of the crime.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, §§ 289–294.]

5. SAME—"WRONGFULLY."

When there is a change in the phraseology, and a word not in the statute is substituted for one that is, and the word substituted is of more extensive significance than and includes the word of the statute, the indictment will be sufficient. The words "unlawfully," "willfully," "fraudulently," and "feloniously" in the indictment include the word "wrongfully."

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Indictment and Information, § 291.]

6. CRIMINAL LAW—ARREST OF JUDGMENT.

Upon a motion in arrest of judgment, questions cannot be considered as to an alleged variance between the averments of the indictment and the testimony offered on the trial, or error in the admission of testimony, or that there was error in refusing a new trial on the ground that the verdict was contrary to the law and the evidence.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Criminal Law, §§ 2475, 2476.]

7. SAME—INSTRUCTIONS.

When special charges are asked to be given to the jury, they must be such as are correct under the state of facts disclosed by the evidence. If they be correct only under a special state of facts, that state of facts must be shown to exist in the case on trial.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 14, Criminal Law, §§ 1982–1985.]

8. EMBEZZLEMENT — DEMAND — NECESSITY OF PROOF.

There are many cases of embezzlement where it is not necessary to prove that a demand has been made by the employer on his employé to comply with his fiduciary obligation, and there was a refusal by the servant to do so. When there is proof of wrongful misappropriation by the employé, and appropriation to his own use, there is no necessity for a demand.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Embezzlement, § 9.]

9. SAME—RETURN OF PROPERTY EMBEZZLED.

The fact that things or money which have been embezzled are afterwards returned does not purge the acts of embezzlement of their criminal character.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 18, Embezzlement, § 34.]

(Syllabus by the Court.)

Appeal from Eighteenth Judicial District Court, Parish of Lafayette; Philip Sidney Pugh, Judge.

B. J. Pellerin was convicted of embezzlement, and appeals. Affirmed.

De Baillon, Mouton & Mouton, for appellant. Walter Guion, Atty. Gen., and William Campbell, Dist. Atty. (Lewis Guion, of counsel), for the State.

### Statement of the Case.

NICHOLLS, J. In an indictment found by the grand jury for the parish of Lafayette, it was charged that B. J. Pellerin (the defendant), at the parish aforesaid (parish of Lafayette), on the 29th day of January, A. D. 1906, being then and there the duly authorized secretary of the Lafayette Building Association, a corporation duly organized under the laws of the state of Louisiana, and whose domicile is in the parish of Lafayette, state of Louisiana, and then and there employed and acting as secretary of said Lafayette Building Association aforesaid, and by virtue of said capacity as secretary aforesaid of said association, was authorized to and did collect and take in his keeping from the said Lafayette Building Association aforesaid, being a loan to be made to one J. A. Martin, for and on account of said Lafayette Building Association aforesaid, the sum of $300, lawful money of the United States of America, which said money aforesaid, taken, collected, and kept for account as aforesaid, the said B. J. Pellerin did then and there unlawfully, willfully, fraudulently, and feloniously embezzle, keep, and convert to his own use and benefit, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the state of Louisiana.

The defendant was arraigned and tried on said indictment, and, having been found guilty as charged by the jury, was sentenced by the court to imprisonment at hard labor in the penitentiary for three years. He has appealed.

### Opinion.

The first objection made by the defendant to the indictment was a motion filed after verdict in arrest of judgment. During the trial defendant reserved several bills of exception to the rulings of the court upon matters of evidence, and to the refusal of the court to give certain special charges which he had requested should be submitted to the jury, and one bill to a portion of the general charge of the judge. He also filed a bill of exception to the action of the court in overruling an application for a new trial.

The grounds assigned for the arrest of judgment were that the indictment filed and the matters therein contained were not sufficient in law, and the indictment was fatally defective, because:

"First. Said indictment does not charge the crime of embezzlement; that said indictment alleges 'that the defendant was the secretary of the Lafayette Building Association, and that as such secretary he did collect and take into his keeping from the Lafayette Building Association, being a loan to one J. A. Martin, for and on account of said Lafayette Building Association, the sum of three hundred dollars,' which allegation does not denounce the crime of embezzlement.

"Second. Because said indictment does not contain the statutory characteristics of the crime of embezzlement as required by section 905 of the Revised Statutes of this state, as amended by Act No. 31 [page 23] of the year 1888; that the said section No. 905, as amended by Act No. 31 [page 23] of 1888, uses the following words, 'shall wrongfully use,' which words are not contained in the indictment filed, and which words are essential and sacramental.

"Third. And for other manifest defects in the record aforesaid appearing."

Wherefore, for want of sufficient indictment in this behalf, the said B. J. Pellerin prays

for judgment, and that by the court he may be dismissed and discharged without day, and for general relief.

In the bill of exception taken to the refusal of the court to sustain the motion in arrest, the district attorney called attention to the fact that no motion to quash the indictment had been filed in limine, and the court stated that no authorities had been cited, nor reasons given why the motion should be sustained, and it assumed the indictment was correct, unless it be shown to the contrary.

The first contention made by appellant on this motion is that:

"The indictment was so defective, in not making use of the word 'wrongfully' in connection with the action of the defendant, that the court was not justified in entering a judgment upon the verdict of the jury."

Embezzlement is a statutory crime.

In reference to indictments charging crimes of that character, it has been repeatedly held that the use of the identical words of the statute is not sacramental. Any words may be used which will unequivocally carry the meaning of the statute so that defendant cannot be misled as to the charge he is to answer. He must be fully informed of the crime with which he is charged.

When there is a change in the phraseology, and a word not in the statute is substituted for one that is, and the word thus substituted is of more extensive significance than and includes the word of the statute, the indictment will be sufficient. State v. Brown, 41 La. Ann. 345, 6 South. 541. Thus, "wantonly" is of greater significance than "willfully," and includes it. See Marr's Criminal Jurisprudence of Louisiana, verbo "Indictment," subd. "The Words of the Statute." The words "unlawfully," "willfully," "fraudulently," and "feloniously" certainly include the word "wrongfully."

The second position taken by appellant under his motion in arrest, if we understand him, is that the indictment as it reads (not having been amended), though designated as one for embezzlement, was under the law really one for larceny.

The extracts found in appellant's brief from Wharton's Criminal Law (10th Ed.) §§ 960–961, 1009, 1027, 1031, and from Bishop's Criminal Law, vol. 2, § 352, and the italicizing of the words "from" in the indictment, indicate the theory of appellant's contention. Counsel say:

"The indictment charges that defendant collected 'from' the association the $300 which he is charged with having embezzled; that the jury found the accused guilty as charged. Therefore this money must have gone into the possession of the association before it was received by him.

"If it was, the accused may have been guilty of larceny but not of embezzlement, for Bishop, in the extract referred to, says:

" 'The money or other thing must not come into the master's possession before it does into the servant's, for, if it does, the taking of it, whether delivered to the servant by the master or not, is larceny.' "

It must come directly from a third person, and not the master, and Wharton (section 1027) says:

"If the case is 'larceny' at common law from the fact that the money was taken from the prosecutor's possession, * * * the prosecution for embezzlement fails. * * * Hence that which is 'larceny' at common law, from the fact the goods were taken from the owner's possession, is not 'embezzlement.' "

Section 905 of the Revised Statutes, as amended by Act No. 31, p. 23, of 1888, reads as follows:

"Any servant, clerk, broker, agent, consignee, trustee, attorney, mandatory, depositary, common carrier, bailee, curator, testamentary executor, administrator, tutor, or any person holding any office or trust under the executive or judicial authority of this state or in the service of any public or private corporation or company, who shall wrongfully use, dispose of, conceal or otherwise embezzle any money, bill, note, check, order, draft, bond, receipt, bill of lading or any other property which he shall have received for another or for his employer, principal or bailor, or by virtue of his office, trust or employment, or which shall have been intrusted to his keeping or possession by another, or by his employer, principal or bailor or by any court, corporation or company, upon conviction thereof, or of having aided or abetted in the commission thereof, or of having been ac-

cessory thereto before or after the fact, shall suffer imprisonment at hard labor not exceeding seven years."

The indictment in this case, charging defendant with embezzlement under the allegations therein contained, was based upon this section of the Revised Statutes as amended.

The case comes before us upon the verdict of a jury finding defendant guilty of the crime charged against him upon the allegations of the indictment. That verdict successfully resisted an attempt made to set it aside on a motion made for a new trial. It cannot be set aside in the Supreme Court on appeal upon a motion in arrest of judgment grounded upon an alleged variance in the proof adduced on the trial and the allegations of the indictment upon an alleged improper introduction of evidence. Such errors have to be corrected through their appropriate remedies.

In Marr's Criminal Jurisprudence of Louisiana, under title "Arrest of Judgment," page 865, it is laid down that:

"Upon a motion in arrest, there cannot be considered an alleged variance between the averments of the indictment and the testimony adduced on the trial; or error in the admission of evidence; * * * or that there was error in refusing a new trial on the ground that the verdict was contrary to the law and the evidence."

State v. Crawford, 32 La. Ann. 526, State v. Frey, 35 La. Ann. 106, and State v. Breaux, 104 La. 543, 29 South. 222, are cited in support of those propositions.

The defendant at no time moved to quash the indictment. He at no time moved to amend it. He does not now object to the indictment otherwise than for failure to make use therein of the word "wrongfully." What he complains of is not the indictment, but the verdict of the jury under the indictment. He insists, as we understand, that assuming the allegations of the indictment to be true, and that full proof thereof had been made, the only legal verdict which could have been rendered in the premises against defendant would have been one for larceny, not embezzlement. The proposition advanced by the defense that if the defendant under the allegations of the indictment, and under the evidence, had made himself criminally liable for larceny, he could not legally be found liable for embezzlement, is not sustainable.

We have on several occasions declared that embezzlement was not a common-law offense, but a statutory crime. In State v. Sullivan, 49 La. Ann. 200, 21 South. 688, 62 Am. St. Rep. 644, this court said:

"The term 'embezzle' used in the statute is one which has a well-recognized and accepted common meaning, as much so as to 'burn' or to 'carry away' "—citing Bishop's Criminal Proceedings, § 322.

It has received frequent judicial decision. It is a broader term than "larceny" under our law, but not exclusive of it, as counsel contends. See State v. Wolff, 34 La. Ann. 1154.

In State v. O'Kean, 35 La. Ann. 903, "embezzlement" is defined to be "the felonious appropriation of the property of another by one to whom it has been intrusted." In State v. Roubles, 43 La. Ann. 201, 9 South. 435, 26 Am. St. Rep. 179, it is defined as "the fraudulent appropriation of property by one to whom it has been intrusted." In State v. Wolff, this court said:

" 'Embezzle' means to appropriate to one's own use property or money intrusted to him by his employer. The use of that word supplies the place of the sentence which counsel claims is sacramental. The single word 'embezzle' means all that sentence does, and something more. Embezzlement is not a common-law offense. It had its origin in the effort to amend the law of larceny. The first statute was tempo Henry VIII, in which the descriptive words were 'did embezzle or otherwise convert to his own use.' The statute of George IV improved and superseded the earlier one, and there the words are 'shall fraudulently embezzle.' Our statute has 'shall wrongfully use * * * or otherwise embezzle.' "

The syllabus of the decision reads as follows:

"Embezzlement is not an offense at common law, but was created by statute. 'Embezzle' includes in its meaning appropriation to one's own use, and therefore the use of the single word 'embezzle' in the indictment or information contains within itself the charge that the defendant appropriated the money or property to its own use."

So far from violation by a fiduciary of the duties imposed upon him by reason of the relations of trust and confidence existing between himself and his employer (in the wrongful appropriation to his own use of property intrusted to him by his employer), relieving him from the effect which attaches criminally to acts of embezzlement, limiting his criminal liability to the pains and penalties which result from "larceny," the very fact that such wrongful appropriation was in violation of the obligations resulting from the fiduciary relations existing between the parties transformed the act of wrongful appropriation (which, but for such violation of the fiduciary relations might have been characterized legally as "larceny") into an act of embezzlement under the statute. We see no legal obstacle standing in the way of the jury's finding defendant guilty as charged in the indictment, and no legal obstacle in the way of the court's sentencing the defendant as having been found guilty of embezzlement.

The district court in our opinion correctly overruled the motion in arrest of judgment. Appellant has not pressed the exceptions taken by him to the rulings of the trial judge in matters of evidence, nor the exception to his denial of a new trial. On the trial appellant requested the presiding judge to give a special charge to the jury, which he did, but with modification. The modification was excepted to. The matter is covered by bill of exception No. 6. He likewise requested the judge to give certain special charges which he declined to do. The refusal was excepted to, and is covered by bill of exception No. 7. The bills referred to were as follows:

"Bill No. 6. On the trial counsel for defendant requested the presiding judge to give the following special charge to the jury:

"'The failure of the defendant to pay over the money, if unexplained, does not of itself raise a presumption of felonious appropriation sufficient to convict.' The presiding judge did give this special charge, but added thereto the following: 'But, if the evidence warrants it, you can convict without proof of demand'—to which addition defendant excepted.

"By the Court: The court had charged that in certain cases no demand need be made, and the charge must be taken in connection with the written charge on file of record. The additional charge added by me is correct, if to convict under the evidence adduced this can be done without demand and refusal.

"Bill No. 7. On the trial of the case counsel for defendant made a request to the court to give in charge to the jury certain specified special charges. Some of the same were given, but the court refused to give the following:

"'First. There should in such case be shown a demand as an essential ingredient for conviction from which a wrongful disposition or felonious appropriation could be inferred. The failure to pay without proof of such demand that is of itself would not therefore be sufficient to convict.

"'Second. If you fail to find beyond a reasonable doubt that the defendant as secretary received the money which he is charged to have embezzled from the Lafayette Building Association, as alleged in the indictment, and that he failed to pay it over on demand, it is your duty to acquit him. And you are further charged that such demand must be made by a person having the legal right to make it.

"'Third. If the jury believes from the evidence that the defendant did pay over, prior to a demand on him therefor, or on a demand on him therefor, all the money received by him as secretary from the Lafayette Building Association, no charge of embezzlement can lie against him, and he must be acquitted.'

"That said special charges were applicable to the case at bar, because it was fully established on the trial that no demand had ever been made upon the defendant, and the evidence fully discloses that said defendant had more than paid the building and loan association, prior to demand on him, all moneys coming into his hands as secretary of said association. That there was no evidence introduced to show that any of the money the defendant stands charged to have embezzled was ever collected or received by the defendant, or that any part of said money ever reached his possession. That the court refused to give said above special charges.

"By the Court:

"The evidence showed that Pellerin credited himself with $300 more than he should on the Martin loan. The jury heard all the evidence and decided that the accused actually embezzled the money as charged. He not only credited himself with more money in the Martin transaction, but he pursued the same policy in several other instances pointed out to the jury by the state examiner; the matter being admitted only to show intent. He was secretary of a building and loan association, collecting money daily and monthly, and at the time of the final settlement his personal account at the bank as well as his official account was overdrawn. He paid back, including the $300, over $3,000, and he had to borrow the money the day or the day before, from the bank on private collaterals in order to settle. The evidence showed all this. He deliberately appropriated the money to his own use, falsified the books in order to do so, and only when confronted by the evidence of his wrongdoing did he make restitution. The charge is in strict accordance with law as given in State v. Tompkins, 32 La. Ann. 623, and the cases of State v. O'Kean, 35 La. Ann. 901, and State v. Flournoy, 46 La. Ann. 1518, 16 South. 454, do not militate against same; the question of the sufficiency of the indictment only being considered in the two last cases. See Am. & Eng. Enc. of Law, vol. 10. title 'Embezzlement,' note 5, p. 995.

"I did charge the jury the charge requested and refused by the court in the O'Kean Case, 35 La. Ann. 901, but added thereto a few words which is the subject of another bill. I believe my charge is full and clear, and that part of it as to demand or rather failure to demand is quoted in full from Wharton's Criminal Law.

"If the law is that a person can falsify his books, embezzle the money, and then when confronted with the evidence of his guilt pay the amount due and escape punishment, then there is little protection afforded from dishonest persons holding offices of trust. The charge requested amounts to an acquittal under the facts as shown, for the accused, after having falsified his books and embezzled the money, when the bank examiner discovered the shortage of $300 together with the other shortages, immediately paid over the money found due.

"Payment under such circumstances is no excuse or justification. The evidence shows that defendant collected money for the association as the secretary; that, when called on for a settlement, the funds were not in the treasurer's hands, nor in the bank; that his account, personal and official, was overdrawn; that he owed the bank $800 besides; and that the money he used to settle with was borrowed the day before or the very day the settlement or payment was made. He used the Martin loan by his false accounting to obtain $300 from the association, and that he used it is shown by his borrowing other money to pay. This question of whether he ever received the money or not was a question of fact submitted to the jury on the evidence, argued before the jury, charged specially to it, and decided finally by it—a question of fact for the jury, and not for the Supreme Court. To which ruling counsel for defendant duly excepted and reserved his bill of exception thereto, which bill after being submitted to the district attorney was tendered to the judge of this court for signature and duly signed by me in open court before sentence, this 12th of October, 1906."

When counsel for defendant in a criminal case asks the court to give special instructions to the jury, they must be such as are correct under the state of facts disclosed by the evidence. The charges asked in this instance would, if correct, be only so under a special state of facts which did not exist, and the court would not have been warranted in giving them to the jury for their guidance, and the judge committed no error in refusing. The charges asked for were too broadly stated to give them.

There are many cases where it is not necessary to prove a demand by the employer and refusal by the servant. Wharton on Criminal Law (9th Ed.) § 1030; State v. Hunnicutt, 34 Ark. 562.

Where there is proof of wrongful misappropriation by the servant, and wrongful appropriation to his own use and benefit, there is no necessity for a demand. State v. Tompkins, 32 La. Ann. 523; State v. O'Kean, 35 La. Ann. 901; State v. Flournoy, 46 La. Ann. 1018–1021, 16 South. 454. The fact that the things, after they had been embezzled, were returned or paid for, does not purge the act of its criminal character. See Wharton on Criminal Law, verbo "Larceny."

We find no ground for reversal in this case. The judgment appealed from is therefore affirmed.