(111 So. 484)

No. 28373.

## STATE v. WILSON.

(Jan. 31, 1927.)

*(Syllabus by Editorial Staff.)*

1. Witnesses ⊜⟶346, 363(1)—Witness' bias, interest, and corruption in particular case are always relevant.

The bias or interest of a witness and facts evidencing corruption on his part in particular case are always relevant to issue.

2. Criminal law ⊜⟶338(1)—Rules of evidence are same in civil actions and criminal prosecutions.

There is no distinction between rules of evidence in civil actions and criminal prosecutions.

3. Witnesses ⊜⟶351—Defendant's testimony that state's witness told her he would testify favorably to her for money held admissible as extrinsic evidence, without laying foundation.

Defendant's testimony that state's witness, who had denied on cross-examination that he had certain conversation with defendant, told defendant that he would testify favorably to her or change his testimony if she would pay him money, *held* admissible as extrinsic evidence, without laying foundation.

Appeal from Fourth Judicial District Court, Parish of Ouachita; Percy Sandel, Judge.

Annis Wilson was convicted of operating a motor vehicle while intoxicated and injuring the property of another, and she appeals. Conviction and sentence annulled, and case remanded for a new trial.

L. F. Grigsby, of Monroe, for appellant.

Percy Saint, Atty. Gen., E. R. Schowalter, Asst. Atty. Gen., and David I. Garrett, Dist. Atty., and J. B. Thornhill, Asst. Dist. Atty., both of Monroe, for the State.

ROGERS, J. The defendant appeals from her conviction and sentence for the offense of operating a motor vehicle while intoxicated and injuring the property of another, in violation of the provisions of Act No. 48 of 1926.

There are two bills of exception in the record, only one of which it is necessary for us to consider. This bill was reserved to the refusal of the trial judge to permit the introduction in evidence of certain testimony tending to affect the credibility of one of the witnesses for the prosecution.

According to the bill, the court's addendum thereto, and the attached transcript of testimony, when the state's witness, one Harold (erroneously referred to in the record as Howell), was on cross-examination, he was asked if he had not had a conversation with the defendant at a certain specified time and place. The witness denied any such conversation. Later, when defendant was testifying in her own behalf, she was asked by her counsel, on direct examination, to state what the witness, Harold, said to her at the time and place referred to in his cross-examination. Upon objection by counsel for the state, the court ruled that for the purpose of impeaching the witness, Harold, defendant might testify that she had a conversation with him at the time and place stated, but inasmuch as the proper foundation had not been laid, the details of such conversation were inadmissible. Thereupon counsel for defendant requested that "he be permitted to recall the witness, Harold, for the purpose of laying the proper foundation if not already laid." This request was objected to by counsel for the state upon the ground, substantially, that it came too late, the state having rested and the defendant having actually entered upon the presentation of her side of the case. The objection was sustained. To all of which counsel for defendant objected and reserved a bill to the ruling of the court, asking that the questions propounded, the objection of counsel for the state, the ruling of the court, and "the reasons given by counsel for defendant" be accepted in lieu of a formal statement of facts.

If the sole object of defendant in attempting to introduce the excluded testimony was

to discredit the state's witness by contradicting him on the point about which he was interrogated, undoubtedly the ruling of the trial judge was correct. But defendant's complaint goes further than this. Her bill, interpreted as a whole, actually involves two legal propositions, namely, her right to contradict the witness without laying the proper foundation therefor, and her right to attack the credibility of the witness by the introduction of independent evidence for that purpose.

Defendant testified, out of the presence of the jury, in order to attach the testimony to her bill, that the witness Harold, in a certain conversation with her, had stated he could be of a good deal of help to her, and, upon her asking what he meant by that statement, said, further, that she knew what he meant, and that if she would pay him money he would testify favorably to her or change his testimony; that she referred him to her counsel, with the remark that whatever he did would be all right with her.

[1] The bias or interest of a witness is always relative to the issue. State v. Craft, 117 La. 213, 41 So. 550; State v. Cox, 136 La. 1008, 68 So. 107. So are facts evidencing corruption on the part of a witness in a particular case. This sort of evidence is, according to Mr. Wigmore, "equally presentable through extrinsic testimony and through cross-examination, and a given fact may thus be in either way admissible." Wigmore, Ev. vol. 2, § 878 (2), p. 1009. The same authority, under the general head of "Testimonial Impeachment," vol. 2, § 945, p. 1082, in discussing the kinds of evidence admissible for the impeachment of a witness, uses the following language, viz.:

"Three different kinds of emotion constituting untrustworthy partiality may be broadly distinguished—bias, interest, and corruption. Bias, in common acceptance, covers all varieties of hostility or prejudice against the opponent personally or of favor to the proponent personally. Interest signifies the specific inclination which is apt to be produced by the relation between the witness and the cause at issue in the litigation. Corruption is here to be understood as the conscious false intent which is inferrible from giving or taking a bribe or from expressions of a general unscrupulousness for the case in hand."

The learned author, in the same volume, at page 1092, discusses the general principles applicable to corruption in a case as ground for impeachment of the witness. In section 956, he states:

"The theoretical place of this sort of impeachment is not easy to determine. It is related in one aspect to interest, in another to bias, in still another to character (i. e., involving lack of moral integrity). It suffices to point out that the essential discrediting element is a willingness to obstruct the discovery of the truth by manufacturing or suppressing testimony. We here are not concerned with a party's similar conduct as equivalent to consciousness of guilt (ante, § 278), but solely with a witness' discrediting conduct. The testimony of one who exhibits such a willingness must suffer the same doubts as that of one who is prejudiced. There are several distinct situations: * * * (2) offer to give false testimony for money or other reward. * * *"

In section 957, in commenting upon a willingness to swear falsely, he says:

"This, beyond any question, is admissible as negativing the presence of that sense of moral duty to speak truly which is at the foundation of the theory of testimonial evidence."

In section 958 appears the following, viz.:

"An offer to testify corruptly should stand on the same footing; it is only a little less broad in its bearings than the preceding evidence, but indicates a similar untrustworthiness."

This court in State v. Craft, supra, quoted approvingly from Rice on Evidence, vol. 3, § 227, as follows:

"The general rule that a witness cannot be impeached by contradicting him as to collateral matters is well understood. But it has been held that the feelings of the witness and his disposition to tell or conceal the truth, in a particular suit in which he is called, are not collateral in the meaning of this rule."

The court also quoted approvingly from Gillet on Indirect and Collateral Evidence, p. 139, § 91, as follows:

"It is not, however, regarded as collateral to show prior ill-feeling, interest, or other matter calculated to show the animus of the witness, and substantive evidence can be introduced on the subject as it goes to the root of the question as to whether the witness' testimony is true."

[2] In our own jurisprudence the case of Chavigny v. Hava, 125 La. 710, 51 So. 696, is exactly in point. The case was a civil action, but there is no distinction between the rules of evidence in a civil action and the rules of evidence in a criminal prosecution. There, plaintiff sued defendant for separation from bed and board, and defendant offered to prove by a witness who lived next to plaintiff that the daughter of plaintiff, who had testified against defendant, had testified entirely from statements made to her by her mother, and that mother and daughter had often rehearsed the testimony given by the daughter, and that they had colluded to have the daughter testify falsely. The testimony was excluded by the court below, but this court reversed the ruling, holding that while this testimony should be carefully weighed, under the rules of evidence it should have been admitted. The court pointed out in its opinion that the testimony was not tendered with a view of contradicting the witness, but merely to show a willingness on her part to testify falsely, and therefore it was not necessary to lay a foundation for its admission.

[3] Our conclusion is that the testimony which was excluded tended to show a willingness on the part of the state's witness for a monetary consideration to testify falsely, and therefore it should have been admitter as extrinsic evidence, subject, of course, to the right of the witness sought to be impeached to deny or to explain his alleged acts and statements. In this way the jury

163 LA.—2

would have been in possession of all the facts necessary for a full and fair consideration of the testimony of the witness, thereby enabling them to determine the degree of credibility to be given thereto.

For the reasons assigned, the conviction and sentence appealed from are annulled, and this case is remanded to the district court for a new trial.