144 So. 138

**STATE v. LEAHY.**

No. 31869.

July 20, 1932.

Rehearing Denied Oct. 31, 1932.

Finnorn & Todd, John J. Finnorn, and Robert B. Todd, all of New Orleans, for appellant.

Gaston L. Porterie, Atty. Gen., and Eugene Stanley, Dist. Atty., and George J. Gulotta, Asst. Dist. Atty., both of New Orleans, for the State.

LAND, J.

Defendant, as agent and employee of the city of New Orleans, and while serving as the secretary of the commissioner of public finance of that city, is charged with the embezzlement of forty-six coupons of the Lafayette Securities Company, Inc., of the value of $1,495, intrusted to his keeping by his employer, the city of New Orleans.

Defendant was convicted of embezzlement and sentenced to serve not less than two nor more than four years at hard labor in the State Penitentiary and, on appeal, presents for the consideration of this court four bills of exception.

Bill No. 1.

Defendant was tried on March 31, 1932. On that day, before the jury was impaneled, he filed a motion for a continuance for one week on the ground that he has had insufficient time to employ counsel and to allow his counsel to become familiar with all the facts of his case, which defendant averred was complicated and involved a number of records, documents, and witnesses who could not be easily reached.

In the per curiam to this bill, the trial judge states:

"Defendant's motion for a continuance shows that he did, on March 22, 1932, receive a notice that his trial was fixed for the 31st day of March, 1932, which was nine days before the actual trial.

"The attorney for the defendant, Mr. Todd, stated that he was employed on March 23rd or 24th, which gave counsel seven or eight days in which to prepare a defense.

"This case was not 'a complicated one involving a number of records, documents and witnesses who could not be easily reached.' The defense was solely that the defendant had received the coupons named in the Bill of Information from the Commissioner of Public Finance of the City of New Orleans, and that he laid them on his, the defendant's desk, and that some one had stolen them.

"Therefore, it can readily be seen that no records or documents or witnesses were necessary to prove this, as the defendant could be and was the only witness that testified that the coupons had been stolen."

The granting of a continuance rests largely within the discretion of the trial judge, and his refusal to grant a continuance should not be interfered with, except when it appears that he has abused the discretion vested in him, and no abuse of his discretion appears in the present case. State v. White, 156 La. 784, 101 So. 136; State v. Dwyer, 159 La. 399, 105 So. 410; State v. Williams, 162 La. 590, 110 So. 766; State v. Scruggs, 165 La. 842, 116 So. 206; State v. Taylor, 167 La. 1113, 120 So. 875.

Bill No. 2.

This bill reads as follows:

"That on the trial of this cause on the 31st day of March, 1932, the State of Louisiana called as a witness one A. Miles Pratt, Commissioner of Finance of the City of New Orleans. That the witness testified in substance as follows:

"He was Commissioner of Finance at the time the alleged embezzlement was committed by the defendant. The defendant was acting as Secretary to the witness. On the 28th day of January, 1931, he went to the box in the bank vault with the defendant where the City's trust funds were kept, and there clipped the bond coupons alleged to have been embezzled. These he turned over to the defendant with instructions to list them, transmit them to the City Treasurer and get a proper receipt.

"Several weeks later the defendant admitted to the witness that the coupons had been stolen on the day they had been entrusted to the defendant with the exception of two coupons which the defendant had cashed at that time without reporting; and that subsequently the stolen coupons had been returned in an anonymous letter. The defendant had further admitted at that time that he had mailed the other coupons, which had been so returned, out to the corporation which had issued them at Lafayette, La. That he mailed these coupons in a letter sent from Birmingham, Ala., to which he signed a fictitious name. That in this letter he asked that the proceeds be held pending further instructions. That he then sent a telegram from New Orleans signed with the same fictitious name, asking that the proceeds be sent to him at New Orleans in care of the Western Union, identification waived.

"The witness stated positively that the defendant's instructions were to transmit the coupons without delay to the City Treasurer.

"During the course of his examination, the witness was asked by counsel for the defense whether or not he felt any hostility toward the defendant, whereupon the witness answered:

" 'No sir, except that Mr. Leahy in my estimation violated my confidence. He was my confidential secretary and he didn't do what he should have done. I was responsible for those coupons and if they had been cashed by Mr. Leahy or any one else I was responsible.'

"Thereupon the following further proceedings were had:

"By Counsel for Defendant: 'Mr. Pratt, do you *know* or have you *learned* since this came up, or have you been *told* that Mr. Leahy furnished information to the District Attorney about the Trust Funds that provoked the investigation of your office?'

"By the Court: *'That is clearly hearsay. I don't think you have the right to ask Mr. Pratt what has been told.'*

"By Counsel for Defendant: *'The purpose is to show bias.'*

"By the Court: 'I think the question is whether he is hostile to the witness or not; *what he has been told is hearsay evidence.'* "

The per curiam to this bill states:

"The Court told Counsel for the Defendant that if Counsel for the Defendant wanted to show bias, prejudice or hostility on the part of the witness Mr. Pratt, towards the defendant, the Court would permit Mr. Pratt to be interrogated at full length on this point, and that Counsel for the Defendant could show, *by legal evidence,* any bias, prejudice or hostility which it was alleged Mr. Pratt entertained towards the defendant.

"The question asked the witness shows, on its face, that the witness was being asked about matters which *were purely hearsay*.

"The Court's ruling denied the defendant the right to interrogate the witness as to matters which *were purely hearsay* in character, but the Court at no time denied the defendant the right to show hostility, bias or prejudice, by legal evidence; the examination of Mr. Pratt will show that Mr. Pratt was specifically asked whether or not he had any prejudice, hostility or bias against the defendant, *and that Mr. Pratt answered in the negative*.

"*No attempt was made to contradict Mr. Pratt's statement that he had no bias, hostility or prejudice towards the defendant, by evidence which would show, or tend to show, that Mr. Pratt had expressed bias, hostility or prejudice towards the defendant in any manner, shape or form*."

■The trial judge, having held, in the presence of the jury, that *the prosecuting witness had denied* that he had any prejudice, hostility, or bias against the accused, counsel for defense clearly had the right to continue to question the state witness, and bring out, by further cross-examination, circumstances showing that he was hostile.

This court has held repeatedly that: "It is always competent in a criminal case to show the feeling entertained by a witness towards the person against whom he is called upon to testify." State v. Cullens, 168 La. 976, 123 So. 645, 647; State v. Graziani, 168 La. 297, 121 So. 872; State v. Wilson, 163 La. 29, 111 So. 484.

"The discrediting of a witness is always relevant to the issue. State v. Griggsby, 117

La. 1046, 42 So. 497. The bias of a witness may be proved by his own testimony * * * or by independent evidence. Underhill on Evidence, p. 305." State v. Fontenot, 131 La. 60, 58 So. 1033.

■The judge a quo also erred in holding that hostility, bias, or prejudice cannot be proved by hearsay evidence. Hostility, bias, or prejudice is a mental state or condition and, in our opinion, any reasonable man may become biased or prejudiced through statements he has heard, if he believes such statements to be true. So, in the present case, the prosecuting witness, without doubt, would have entertained bias or prejudice against the defendant, had he heard and believed that defendant, his confidential secretary, had given information about the office of the prosecuting witness that provoked a grand jury investigation, all for the purpose of obtaining immunity for the defendant himself.

■The evidence sought to be introduced by counsel for defendant was not only competent, in our opinion, but tended to show that the witness had bias or prejudice against defendant. The truth or falsity of what the prosecuting witness had been told was not in issue; but his bias or prejudice depended upon whether or not he had heard and believed the statement about which he was interrogated.

■The testimony of the prosecuting witness was exceedingly damaging to defendant. This testimony, however, was permitted to go to the jury in the case, unchallenged and without any opportunity having been given defendant to attack the credibility of the prosecuting witness; one of the modes of attack being to show bias, or prejudice, or ill

feeling, as was attempted in this case.

In our judgment, the ruling of the trial judge was prejudicial to defendant, and to such an extent in this particular case as to constitute reversible error.

### ·Bill No. 3.

■ This bill was reserved to the refusal of the trial judge to charge the jury that "the defendant must be acquitted unless the State has proved a demand made on him to return the money or property embezzled or other circumstances putting him in default."

The trial judge refused to give this special charge for the reason that it was unnecessary that a demand be made, as the evidence showed wrongful misappropriation by defendant, whose defense was that the coupons had been stolen from him.

We find no error in the ruling of the judge a quo. As said in Marr's Criminal Jurisprudence, Embezzlement, vol. 1, p. 295: "There are many cases where it is not necessary to prove a demand by the employer and refusal by the servant. Where there is proof of wrongful misappropriation by the servant, and wrongful appropriation to his own use and benefit, there is no necessity for a demand." See, also, State v. Nahoum, 172 La. 99, 133 So. 370; State v. Pellerin, 118 La. 547, 43 So. 159.

### Bill No. 4.

This bill was reserved to the overruling by the trial judge of a motion for a new trial, based on the grounds contained in bills Nos. 1, 2, and 3, already disposed of, and on the further ground that the verdict was contrary to the law and the evidence. Further discussion of this bill is not necessary.

For the reasons assigned under bill of exceptions No. 2, it is ordered that the conviction and sentence appealed from be set aside, and that this case be remanded to the lower court for a new trial.

ROGERS, J., dissents and hands down reasons.

OVERTON, J., concurs in dissenting opinion of Justice ROGERS.

BRUNOT, J., dissents from ruling of bill No. 2.

ROGERS, J. (dissenting).

I think defendant's conviction should stand. The record, as I appreciate it, does not affirmatively show that the trial judge held in the presence of the jury that Pratt, the prosecuting witness, had denied that he had any prejudice, hostility, or bias against defendant. All that the trial judge did, as disclosed by defendant's bill of exception No. 2, was to deny defendant the right to interrogate the witness as to matters which the judge deemed were purely hearsay in character.

Prior to the propounding of the question that was excluded, the witness had been asked by defendant's counsel the direct question, whether or not he felt any hostility toward the defendant. The witness answered: "No, sir, except that Mr. Leahy in my estimation violated my confidence. He was my confidential secretary and he didn't do what he should have done. I was responsible for those coupons, and if they had been cashed by Mr. Leahy or any one else I was responsible."

The exception contained in the answer clearly shows, in my opinion, not only that

the witness was prejudiced against the defendant, but also the reason for the existence of that prejudice, namely, that the witness believed the defendant had violated the confidence which he had reposed in him and that defendant was guilty of the offense with which he was charged.

The answer of the witness having disclosed his unfriendly feelings towards the defendant, the matter should have rested there; and the action of the trial judge in excluding the question seeking to elicit hearsay evidence was correct, although the reason given for his ruling may have been incorrect.