LAND, J.
The defendant was indicted for murder, tried, and found guilty as charged without capital punishment. From a life sentence pursuant to the verdict, the defendant has appealed.
The accused was sentenced on July 24, 1906, and on the same day was granted an appeal to the Supreme Court, returnable according to law; that is, within 10 days. This court being in vacation, the transcript was not filed until October 3, 1906, on the third day after the commencement of the term. The record has been supplemented by bringing up a statement of facts taken by the clerk during the trial and showing that three bills of exception were reserved. Nine bills of exception are found in the transcript duly signed by the trial judge, but not filed by the clerk until October 2,1906. The record does not show when the bills were presented and signed. The state complains that none of these bills were presented to the district attorney for examination, and only three exceptions were reserved as shown by the notes of evidence. Counsel for defendant asserted at the bar that the bills were presented to the judge in due season, and that, if he did not sign them and cause them to be filed, the fault should not be imputed to the accused. In considering the matter, we cannot go outside of the record.
All the bills recite that exceptions were taken on the trial of the case, and the question is concluded by the certificate of the judge. Under Act No. 113, p. 162, of 1896, the clerk is only required to take down the evidence to serve as a basis of the bill. The objection, ruling, and reservation of exception must be shown by a bill of exceptions as before the enactment of the statute. The statement of fact prepared by the clerk should be by him annexed to the bill; but, if it be not so annexed, it suffices if the record identifies the statement with the bill of exception by reference or otherwise. The statement of facts provided by Act No. 113, p. 162, of 1896, is not an essential prerequisite to the reservation and taking of a bill of exception. If the evidence be not taken down, a statement of facts may be made in the bill itself. See Marr’s Criminal Jurisprudence of Louisiana, p. 853.
Bills of exception should be presented at the trial, or the point should be then expressly reserved and noted, and after trial embodied in a bill without unnecessary delay. State v. Romero, 5 La. Ann. 24. This notation should be made or approved by the trial judge. ■ In the case at bar it is not shown that the bills were presented after the trial, and the bills themselves recite that exceptions were reserved on the trial. The record does not show when the bills were signed by the judge. Bills should always be submitted by counsel to the district attorney prior to being handed to the court for signature ; but, if they be signed by the judge without this formality having been observed, the *1049 Supreme Court -would not be justified in refusing to consider them. See Marr’s Criminal Jurisprudence of Louisiana, p. 850. The time for the presentation of bills of exception 'should be regulated by rules of court, which should require such presentation without unnecessary delay and before an appeal is taken.
Of the nine bills of exception only three are discussed in the brief of counsel, and the others may be considered as waived. Counsel’s main reliance is on bill No. 7. This bill recites that on the trial of the case the district attorney tendered proof of individual instances of disorderly and violent conduct on the part of the accused for which he had been convicted and fined by the mayor of the city of Baton Rouge, to which testimony counsel for the accused objected, on the ground that evidence of individual acts of the accused other than those for which he was on trial were not admissible to show character, and that the issue of good character tendered by the accused could only be met and rebutted by evidence as to general bad character, or reputation for peace and quietness in the community in which he lived, which objection was overruled, and the testimony admitted, to which ruling counsel for the accused excepted. The per curiam reads as follows:
“The accused took the witness stand on his own behalf. On cross-examination the district attorney interrogated him as to a difficulty he had had the day or day before the killing. Among other things, the district attorney asked him if he had not been tried and fined by the judge of the city court on the morning of this killing. The accused would not admit that he had been fined as the district attorney asked him. On redireet-examination the district attorney placed on the stand the judge of the city court, who testified to the trial and fining of the witness.”
Counsel for the defendant argues, first, that evidence of another and extraneous crime is inadmissible; and, second, that the cross-examination was on matters collateral to the issue, and therefore the witness could not be contradicted.
Besides tendering the issue of his reputation for good character for peace and quiet, the accused was a witness in his own behalf, and the question of his credibility was relevant to the issue.
Wigmore on Evidence says that, for the purpose of testimonial impeachment, “convictions for crime are everywhere conceded to be admissible.” Wigmore, Ev. 987. The ' same writer, in treating of collateral contradiction, says that there are two groups of facts of which evidence is admissible independently of the contradiction: (1) Facts relevant to some issue in the case; and (2) facts relevant to the discrediting of a witness. The corollary is that neither is collateral. Id. § 1003. Wigmore, after stating that particular acts of misconduct are not provable by extrinsic testimony to impeach moral character, says:
“Except a judgment of conviction of crime, which, so far as it is provable by extrinsic testimony to impeach character, is therefore "also .thus provable in contradiction.”
The eases from our own Reports cited by defendant’s counsel merely enunciate the general doctrine that a witness cannot be cross-examined as to any fact which is collateral and irrelevant to the issue for the purpose of contradicting him by other evidence if he should deny it. State v. Wiggins, 50 La. Ann. 332, 23 South. 334; State v. Collins, 48 La. Ann. 1454, 21 South. 86; State. v. Donelson, 45 La. Ann. 757, 12 South. 922; State v. Spencer, 45 La. Ann. 1, 12 South. 135. If an ordinary witness may be impeached by proof of the conviction of crime, for a stronger reason, an accused person who, not only testifies, but tenders the issue of his good character, should be subject to like impeachment. The error of counsel consists in assuming that the discrediting of a witness is a matter collateral and irrelevant to the issue. On the contrary, the credibility of a *1051 witness in a criminal case may be of vital consequence in determining the question of guilt or innocence.
Bills 5 and 8 are referred to, but not discussed in the brief of counsel. The question raised by these bills is whether the accused had, not only the right to prove his good character for peace and quiet, but also for honesty and trustworthiness. Defendant’s counsel cite State v. Parker, 7 La. Ann. 85, as holding that a person accused of crime may prove in his defense his general good character for peace and quietness, and also his character as to such moral qualities as have pertinence to the charge. In that case the defendant offered to show “that he was of a mild disposition, and one of the last men who would willingly shed a woman’s blood; that he was a kind and affectionate husband and father, honest and industrious, of strict integrity and pure morals.” The court ruled that such evidence was admissible as far as pertinent to the charge of murder.
In the recent case of State v. Bessa, 115 La. 259, 38 South. 985, this court held in a case of assault to murder, that, while questions as to the kindly or violent disposition of the accused were admissible, questions as to his honesty and industry were not, saying:
“So far as concerns the other two questions, the honesty and industry of the accused bore so remotely upon the nature of the crime charged as to be clearly irrelevant.”
The court cited 12 Cyc. 413, and Wharton Crim. Law (7th Ed.) § 636, and State v. Guy, 106 La. 10, 30 South. 268, as to impeachment of witnesses.
It seems to be well settled that evidence of the good character of the accused must relate particularly to the trait of character involved in the offense charged. We see no reversible errors in the rulings of the trial judge.
Counsel assigned orally at the bar in the course of his argument, “as errors apparent on the face of the record,” (1) that the transcript does not show that court ■qjas opened, or that the proceedings of the arraignment, trial, verdict, and sentence were had in open court; and (2) that the presentment was not made by a legal grand jury of 12 members as required by law.
An assignment of errors must be in writing, and must be filed within 10 days after the appeal is lodged in the Supreme Court. See Marr’s Crim. Jurisprudence, 880. There are, however, a number of cases holding that, where the certificate of the clerk shows that the record is complete, the appellant may at any time call the attention of the court to any error apparent on the face of the record, without making a formal assignment thereof. Id. 882.
The transcript inferentially shows that all the proceedings were had in open court. In transcribing the minutes, the clerk omitted the usual formula of the opening of the court from day to day. But the minutes show that the grand jury came into court and made their report; that the accused was brought to the bar and was formally arraigned and pleaded; that the accused was brought to the bar for trial, and he and his counsel were present in court when the jury were impaneled and sworn, and the trial had resulted in a verdict of guilty, whereupon the accused was remanded for sentence; that the accused came into court and filed his motion for a new trial; and that the accused was brought to the bar to be sentenced, and, having been asked if he had anything to say why sentence should not be pronounced against him, was duly sentenced by the “court.” The same objection, that the record does not disclose that the proceedings were had in open court, would be fatal to the appeal of the accused, as the minutes simply show that on motion the appeal was ordered, without stating where, when, or by whom. Under the Constitution of 1898 the sessions of the district court of East Baton Rouge are continuous for 10 months, and it is provided *1053 by Act No. 163, p. 320, of 1898, that proceedings shall be held to be in open court while the judge is on the bench. In State v. White, 52 La. Ann. 206, 26 South. 849, the court held that where the complaint urged by an accused is, not that he was in fact not present, but that the record does not disclose the fact of such presence, the Supreme Court, if in doubt as to the fact, will not set aside the verdict of the jury and reverse the judgment, but will hold the case open until, by I>roper proceedings, the actual facts can be ascertained. In the case at bar we are not in ■doubt as to the presence of the accused or that his trial was had in open court. Neither fact is questioned.
The record shows that the indictment was presented by 11 grand jurors; one being absent. Under article 117 of the Constitution of 1898 the grand jury is composed of 12 members, 9 of whom must concur to find an indictment. When the law required a ■grand jury to consist of 16 members, 12 of whom could find a bill, it was held that the presence and concurrence of 12 only were requisite for the transaction of the business. State v. Swift, 14 La. Ann. 839. Where 9 members of a grand jury can find a bill, -there is no good reason for holding that it is necessary for 12 members to be present when the bill is presented to the court-
judgment affirmed.