LAND, J.
The defendant was indicted for murder, and found guilty of manslaughter. He appeals from a sentence of imprisonment for two years in the penitentiary.
The bills of exception on which defendant relies will be considered in their logical order.
lyThe defendant moved to quash the indictment on the ground that the grand jury had been illegally impaneled, in this: that the sheriff opened the envelope containing the names of the 20 grand jurors, and emptied the slips on which the names were writteu into an open box, and drew therefrom 11 names of jurors who with the foreman constituted the grand jury. The judge says:
“The sheriff then, in presence of the court and its officers, opened the envelope and deposited all the names of the grand jurors in a small box used for that purpose; and, after having so deposited them there and shaking them up, he drew therefrom 11 jurors to complete the jury.”
The motion alleged no prejudice or injury.
Section 8 of Act No. 135, p. 221, of 1898, reads in part as follows:
“The judge shall select from the list of grand jurors a suitable person to act as foreman of the grand jury, and the sheriff, under direction of the court, shall draw from the envelope indorsed ‘List of Grand Jurors,’ the names therein until eleven answer, who with said foreman, shall constitute the grand jury.”
Section 4 of the same act provides that the slips containing the names of the petit jurors for each week shall be placed in separate envelopes, which, with the one containing the list of grand jurors, shall be placed in a box, labeled “Jury Box.”
The primary purpose of the requirement’ that the names of jurors, grand and petit,, shall be placed in separate envelopes in the-same box, seems to be to dispense with the-use of a separate box for each list.
On the meeting of a grand jury session of the court, the box is unlocked, and the envelope containing the list of grand jurors-is taken therefrom and opened. The statute provides that the sheriff, under direction of the court, shall draw from the envelope file-names therein until 11 answer. There is no such requirement as to petit jurors, who are-called upon to determine the question of the-guilt or innocence of the accused. Hence, we consider the requirement that the names-of the grand jurors be drawn from the envelope, instead of a box or other receptacle,, as merely directory. Defendant, in the absence of any suggestion of injury or prejudice, has no legal ground to complain of the mode of the drawing. There is no showing-that any members of the grand jury thus secured were incompetent or disqualified. That, the defendant was properly indicted is beyond question, as he admitted the killing.
In State v. Texada, 19 La. Ann. 436, file-names of the grand jurors were not drawn from the box, but were secured by calling the-list of the regular panel summoned for the-term and taking the 15 who first answered to their names, after selecting .a foreman from the whole panel. There can be no question of the illegality of such a selection of the members of a grand jury. There was-no drawing at all.
In State v. Smith, 31 La. Ann. 406, a grand, jury venire was set aside because not drawn» within the time specified by the statute. The- *377 court properly held that the jury commission could not abridge the statute time as might suit the convenience or caprice of its members.
In State v. Davis, 14 La. Ann. 689, it was held that the act of 1858, making it the duty of the district judge to impanel the grand jury on the first day of the term, was merely directory. In the same case it was also held that a mere irregularity in the drawing of the grand jury by the sheriff was not sufficient to quash the indictment where no injury could be suffered by the accused.
We think that section 15 .of Act No. 135, p. 223, of 1898, which forbids the setting aside of venires for defects or irregularities in the selection or summoning of juries, unless some fraud has been practiced or great wrong is committed, is applicable in spirit, if not in letter, to grand juries, with the lesser power to accuse.
In the instant case the common practice of drawing the names of grand jurors from a box was followed. This practice is, however, contrary to the letter of the statute, which requires such drawing to be from the envelope. There is no good reason why this provision of law should not be observed and enforced in the district courts throughout the state.
2, 3. The second bill was reserved to quite a lengthy question propounded on cross-examination to J. K. Jordan, a witness for the defendant, for the purposes of showing that he had made contradictory statements relative to the homicide. Counsel for defendant objected to the following statement embodied in the question:
“And that you begged Mr. Mitchell to go back home, that you were afraid that Mitchell would get pulled on account of his condition, and that Mitchell did not go.”
The sole ground of objection was that the state could not indirectly, in this manner, put at issue the character of the defendant by showing that he was, on the occasion in question, under the influence of intoxicating liquor. The court overruled the objection, and admitted the question for the purpose of impeaching the witness, and so instructed the jury, and further because the statement could not be divided. We assume that the witness answered in the negative, as the third bill shows that the witness McCann was put on the stand for the purpose of proving that the witness Jordan made the statement inquired about. Defendant objected to McCann’s answering as to whether or not such a statement had been made to him, whereupon the testimony of McCann was taken down. Defendant then objected to any answer to the question, because it put at issue the defendant’s character; because the question did not contain all the substance of the alleged conversation; because the witness Jordan, when he made the statement, was under the influence of opiates, was suffering from a wound received in the same difficulty, and was not in a condition to make a correct statement of the circumstances surrounding the homicide; and, finally, because the witness McCann had a strong feeling against the witness Jordan. The objections were overruled for the same reasons stated in, bill No. 2, and the defendant excepted. The witness McCann answered the question in the affirmative. The third and fourth grounds raise no issues of law. The condition of Jordan when he made the statement and the animus of McCann were questions for the jury. The examination of McCann showed that the question embraced all the substance of the conversation which took place, except “what brought up the conversation as to how the shooting took place.” The witness further said:
“The question was not brought up as to how the trouble came up.”
The only thing remaining in these two bills for consideration is the objection that *379 the question and answer tended to raise an issue of the good character of the defendant.
In the first place, we do not consider that evidence tending to show that the defendant was under the influence of liquor on the day of the homicide raised any issue of good or bad character pertinent to the question of his guilt or innocence. In the second place, the contradictory statement was admitted for the sole purpose of impeaching the credibility of the witness Jordan, and was relevant for that purpose.
Material testimony should not he excluded because the witness in giving a connected narrative of an occurrence finds it necessary to mention some act or circumstance not independently admissible in evidence. State v. High, 116 La. 79, 40 South. 538. The objection that the question related to a collateral fact or irrelevant matter, and that, therefore, the answer of the witness could not be contradicted, was not made in the court below. However, the impeachment of the credibility of a witness is always relevant and material, and sometimes vital in a criminal trial. State v. Griggsby, 117 La. 1046, 42 South. 497.
4. The defendant, in shooting at a man, killed the deceased, a small boy. The district attorney in his closing address to the jury said:
“Gentlemen of the jury, there is one thing that I have left out, which has impressed me all during the trial of this case. I have noticed sitting on the front row of seats [meaning the row of seats right next to the jury box] a lot of little boys. These boys have an interest in the outcome of this case for the reason that the deceased was a boy, and they are watching what your verdict will be.”
The trial judge thereupon rapped the district attorney down, and told him that he must stay within the record, and instructed the jury that they must decide the case according to the evidence and the law as charged by the court. Defendant excepted to the remarks of the prosecuting officer.
It is argued that the judge did not charge-the jury to disregard the remarks. The-judge by his words and action rebuked the-district attorney, and his instructions to the-jury sharply called their attention to their. duty in the premises. The suggestion that the boys sitting in front of the jury had am interest in the outcome of the case because-the deceased was a boy, and were watching: what the verdict would be, was improper, but at the same time was not calculated to excite-passion or prejudice in the minds of the-jurors. It has been held that the jury may be-told that the people look -to them for protection against crime, and also that, while it is improper for the prosecuting officer to state-that if the juries do not punish such crimes; the people will do so by vigilance committees,, it is not reversible error. 12 Cyc. 582. We-think that the interference of the court cured! any possible prejudice that might have beem created in the minds of the jurors by the-remark in question. Such is the legal presumption. It is only in extreme cases that' a verdict will be set aside on account of improper remarks made by the prosecuting officer.
5. The fifth bill was reserved to a portion-of charge of the court to the jury. The-charge was in writing, and, taken as a whole,, covered the case, which in substance was as-follows: The defendant got into a difficulty with one Termanillo, in the house of the lat.ter, which terminated in an exchange of shots, resulting in the wounding of the defendant and the killing of the boy, John Dolan, who was inside of the house, by a shot fired by the defendant at Termanillo, who-was standing in front of the door. The defendant pleaded self-defense. The court correctly charged the jury that, if the facts-made out a case of self-defense as to Termanillo, it would be self-defense as to thedeeeased, and, if a case of murder or manslaughter as to Termanillo, it would be mur *381 der or manslaughter as to the deceased. The court defined murder and malice, and also the crime of manslaughter.
Almost all of the portion of the charge excepted to was taken from the opinion of this court in State v. Dowdell, 106 La. 648-649, 31 South. 151, to illustrate the proposition that, where an intent to do wrong exists and an unintended wrong ensues as a natural and probable consequence, the unintended wrong derives its character from the general evil intent. The judge made a practical application of the principles announced in said case, as follows:
“Therefore, if you should find from the evidence that the accused wrongfully and wantonly discharged a deadly and dangerous weapon into the dwelling house of the said stepfather of the deceased, and thereby caused the death of the deceased, John Dolan, malice will be presumed from such acts, and you should convict as charged, with or without capital punishment, within your discretion.”
The charge must be taken as a whole, and the objection that a single paragraph tended to induce the jury to believe that, regardless of the reason the defendant might have had for firing the shot that entered the house, they would have to find the defendant guilty, although he acted in self-defense, is without merit. The paragraph referred to simply means that an intent to kill any one in the house might be inferred from the use of a deadly weapon and the shooting into the dwelling. The last paragraph refers to such shooting as wrongful and wanton, and the charge as a whole gave to the defendant the full benefit of any and all defenses and excuses that he may have had. By his plea of self-defense defendant admitted that he shot to kill the stepfather. The further objections that the portion of the charge objected to argue the proposition of malice without defining it, and that the court instructed the jury erroneously on the question of shooting into a dwelling house, are answered by the statement already made that the charge as a whole is correct and' could not have been misunderstood by the-jury. The defendant asked for no special instructions. The verdict of manslaughter practically eliminated all questions of malice. The motion for a new trial is but a repetition of the matters set forth in the bills of exception.
Judgment affirmed.