On Rehearing.
O’NIELL, J.
Felix John Birbiglia and Charles Jones Zalenka were indicted, together with one Robert Burns, for the murder of Mrs. Bertha Michelsohn Neason.
Birbiglia filed a motion to quash the indict-’ ment on the ground that only nine members of the grand jury were present or took part in the investigation of the case or the finding of the indictment. The motion was overruled, and Birbiglia’s counsel reserved a bill of exception to the ruling.
Thereafter Zalenka and Burns, through their attorney, moved for a severance, alleging that their defenses were antagonistic to *23 those of Birbiglia; that the confessions obtained. by the police from the defendants, incriminating each other, and designed to be rised in evidence against them on trial of the case, would- be greatly to their prejudice; and that they should therefore have a separate trial from that of Birbiglia. The motion was overruled, and the attorney for Zalenka and Bums reserved a bill of exceptions to the ruling.
Thereafter Birbiglia’s attorney, who did not represent either Zalenka or Burns, moved for a change of venue, alleging that the local newspapers had, by their publications regarding the homicide, created such a prejudice against him in the’ community that it was impossible for him to obtain a fair or impartial trial in the Parish of Orleans. After hearing evidence on the motion for a change Of venue, it was overruled; and Birbiglia’s attorney reserved a bill of exception to the ruling.
The ease of all three defendants having been fixed for trial,,and the district attorney and the attorneys for the defendants having announced, when the case was called for trial, that they were ready to proceed with the trial, the district attorney asked for a severance as to the defendant Burns, announcing that he would then try only Birbiglia and Zalenka. The attorney for Birbiglia objected to the severance as to Burns, on the ground that the district attorney had successfully objected to the severance asked for by Burns and Zalenka and should not be permitted to withdraw his objection as to Burns immediately before putting the other defendants on trial. The objection to the severance was overruled; and Birbiglia’s attorney reserved a bill of exception to the ruling.
Birbiglia and Zalenka were then tried, and found guilty of the murder. They filed motions for a new trial, reiterating the complaints which they had made in all previous bills of exception, and contending that the verdict should be set aside for the further reason' that one of the jurors, Louis Surgi, had, when he received his summons, announced that he was pleased with the opportunity to serve on the jury because he intended to hang the defendants. The motions for a new trial were heard and overruled, and bills of exception were reserved to the ruling. The defendants were then sentenced to suffer the penalty of death. On appeal to this court, the verdict and sentence were annulled, because a majority of the members of this court regarded a certain part of the trial judge’s charge as an erroneous instruction. On the petition of the state, a rehearing was granted, and tbe case has been reargued on all of the bills of exception reserved by both or either of the defendants.
[1 ] The first bill of exception to be considered is that which was reserved by Birbiglia’s attorney to the overruling of his motion to quash the indictment. Plis contention is that the finding and presentment of an indictment by less than 12' grand jurors is a violation of articles 2 and 9 of the Constitution of this state, and a violation of the Fifth and Fourteenth Articles of Amendment of the Constitution of the United States. This question was presented, and decided contrary to appellant’s contention, in the following cases, viz.: State v. Griggsby, 117 La. 1046, 42 South. 497; State v. Walker, 137 La. 197, 68 South. 407; State v. McLaughlin, 138 La. 958, 70 South. 925 ; and in State v. Pailet, 139 La. 697, 71 South. 951, Ann. Cas. 1918A, 102.
Appellants’ attorney contends that the ruling in the cases cited was erroneous; that the ruling in State v. Griggsby was based solely upon the decision in State v. Swift, 14 La. Ann. 827, which was not appropriate, because of a change in the provisions of the Constitution as to the number of grand jurors required to constitute a quorum, ,and that the ruling in State v. Walker, State v. McLaughlin, and State v. Pailet, merely fol *25 lowed the decision in State v. Griggsby, without observing the change in the provisions of the Constitution.
It appears that article 116 of the Constitution of 1879 merely declared that the General Assembly should provide for the selection of grand and petit jurors, leaving it to the General Assembly to determine how many members the grand jury should be composed of, and how many should constitute a quorum, or how many should concur to find an indictment.
Section 3 of xVct 98 of 1880 (page 125), being the statute organizing the Criminal District Court for the parish of Orleans, as established by article 130 of the Constitution of 1879, declared:
“That the grand jury for the parish of Orleans shall consist of sixteen persons, twelve of whom shall constitute a quorum.”
Article 117 of the Constitution of 1898,. as retained in the Constitution of 1913, declares :
“A grand jury of twelve, nine of whom must concur to find an indictment, shall be impaneled in each parish twice in each year, and shall remain in office until a succeeding grand jury is impaneled: except in the parish of Cameron, in which at least one grand jury shall be impaneled each year.”
Section 7 of Act 135 of 1S9S, as originally enacted, carrying out the provisions of articles 116 and 117 of the Constitution of 1&98, relating to juries in other parishes than the parish of Orleans, declared:
“The grand jury shall he composed of twelve members, nine (9) of whom must concur to find an indictment.”
By Act 155 of 1906 (page 262), relating to juries in other parishes than the parish of Orleans, section 7 of Act 135 of 1898 was amended in several respects. The first amendment was to declare that the grand jurors should serve until their successors should be selected, and qualified, instead of the original provision that the grand jurors should serve “for the next ensuing six (6) months.” Another amendment was to ímovide for selecting a grand juror in case one already impaneled should become disqualified for any cause. The original provision was in case a member should become disqualified “for any case.” The only amendment which pertains to the question before us, however, declares in terms that 9,members of the grand jury, in parishes other than the parish of Orleans, shall constitute a quorum, viz.:
“The grand jury shall be composed of twelve members, nine (9) of whom must concur to find an indictment, and nine members present shall constitute a quorum for the transaction of business with full power and authority to investigate all matters and to find and report indictments and other matters, the same as if the twelve were present and acting, provided that when less than twelve are present, at least nine (9) shall concur to find indictments or report on other matters. In the event the foreman should be absent, then the presiding judge shall appoint one of the remaining eleven as acting foreman, or foreman pro tempore, who shall possess and exercise all the 'powers (whilst so acting) of the foreman.”
As the Act 135 of 1898 and the Act 155 of 3906 do not apply to the parish of Orleans, there has been no act of the Legislature reducing the number of members of the grand jury for that parish, or the number necessary to constitute a quorum, since the enactment of Act 9S of 1S80, declaring that the grand jury for the parish of Orleans should consist of 10 members, 12 of whom should constitute a quorum. ■ Section 3 of Act 98 of 1SS0, however, has been superseded by article 117 of the Constitution of 1S9S, retained in the Constitution of 1933, declaring that the grand jury in each and every parish shall consist’ of 12 members, 9 of whom must concur to find an indictment. It would be altogether unreasonable to say that the only provision of section 3 of Act 9S of 1S80 that was repealed or superseded by article 117 of the Constitution is the provision that the grand jury for the parish of Orleans should consist *27 of 16 persons, and that the provision, “twelve of whom shall constitute a quorum,” remains in force or effect. The expression “twelve of whom,” in the provision of section 3 of Act 98 of 18S0, that the grand jury for the parish of Orleans should consist of 16 persons, 12 of whom should constitute a quorum, meant 12 of the 16 persons of whom the grand jury should then be composed. When the Constitution reduced the number of members necessary to constitute a grand jury from 16 to 12, it abolished the provision of section 3 of Act 9S of 1880 that 12 of the 16 should constitute a quorum.
It is said in appellants’ brief that article 117 of the Constitution forbids our holding that an indictment can be found by the concurrence of only 9 members of the grand jury when less than 12 have taken part in the deliberations. But we do not find it so. All that the Constitution requires, in that respect, is that there shall be in existence a grand jury composed of 12 qualified members, and that 9 of them must concur to find an indictment. There is not the slightest implication that every member of the grand jury must take part in the deliberations in any case, in order that 9 members may concur to find a valid indictment.
By the terms of Act 155 of 1906, applying to every parish in the state except the parish of Orleans, 9 members of the grand jury constitute a quorum for the transaction of any business. It would therefore seem strange indeed if the Constitution required the presence of all 12 members of the grand jury for the parish of Orleans to constitute a quorum for the transaction of any business. If article 117 of the Constitution so required for the parish of Orleans, the requirement would apply also to every other parish in the state, and Act 155 of 1906 would be unconstitutional; for article 117 makes no' distinction or exception as to the parish of Orleans. Our opinion is that the provision in article 117 that the grand jury shall be composed of 12 members, and that 9 must concur to fin'd an indictment, is self-operative. And we find nothing in the Constitution or statutes of this state to justify a ruling that all 12 members of a grand jury must be present to constitute a quorum, when the concurrence of 9 members only is required to find an indictment.
Article S6 of the Constitution declares that this court shall be composed of five members, that is, a chief justice and four associate justices, and that a majority of the members shall constitute a quorum,; and article 89 requires the concurrence of three, that is, a majoritj’-, of the members of the court, to render a judgment. As was suggested in the case of State v. Causey, 43 La. Ann. 901, 9 South. 903, there is no more reason why the presence of the entire membership of the grand jury should be required to transact business, when the concurrence of 9 only is required to find an indictment, than there would be for requiring the 'presence of the entire membership of this court, when the concurrence of only three members is required to render a judgment. The word “quorum,” as used in section 3 of Act 98 of 1880, and as used with regard to all deliberative assemblies, means the number of members whose presence is required for transacting business. The finding of an indictment is the most solemn and important function a grand jury has to perform. As the concurrence of more than 9 members is not required for exercising that function, it would be unreasonable to require the presence of more than that number to constitute a quorum for any other purpose. Our conclusion is that our former rulings upon this question are correct.
[2] The next bill of exception to be considered is that which was reserved by Zalenka to the overruling of his motion for a severance, filed on behalf of himself and Burns. It does not appear that any evidence was offered in support of the motion, unless it be *29 that the court should regard as evidence the confessions which the defendants had made, which had been taken down stenographically and transcribed, and which were referred to expressly in the motion for severance. It is said in the statement per curiam, attached to this bill, that the confessions showed that the defense of Birbiglia on the one side and the defenses of Zalenka and Burns on the other side were not antagonistic to each other. The judge found that the confessions which the three defendants had made corroborated each other, and that there was no showing that the defenses would be antagonistic to each other on the trial of the case. As a matter of fact, the confessions or statements which the three accused parties, Birbiglia, Zalenka and Burns, made to the superintendent of police, within a few hours after the homicide, were, in almost every detail, corroborative of each other. They did not indicate that Birbiglia’s and Zalenka’s defenses would be antagonistic to each other. The confessions of Birbiglia and Zalenka, and the statement of Burns, left little or no ground for any defense whatever on the part of either Birbiglia or Zalenka. They acknowledged that they had conspired to invite the woman out for an automobile ride and murder her and rob her of her diamonds. Birbiglia acknowledged that he fired the fatal shots into the woman’s body while he had his arm around her, on the rear seat in the automobile, and that he took her diamond rings off of her fingers after shooting her. Zalenka acknowledged that he was on the front seat of the automobile at the time, and handed Birbiglia the pistol with which to shoot the woman. They both acknowledged that, after Birbiglia had shot her and robbed her of her diamonds, they dragged her body from the automobile to the edge of a canal, by the side of the road. Birbiglia acknowledged that he had hidden the diamonds in a crevice in the wall of his father’s establishment; and, | in corroboration of his statement, he went with the policemen and showed them where the diamonds were hidden, and the policemen found the diamonds there. The only difference between the confession of Birbiglia and that of Zalenka is that Birbiglia displayed little or no reluctance in assuming responsibility for the crime, whereas Zalenka first denied that he had had any knowledge of Birbiglia’s intention either to murder or to rob the woman, and he first denied that he had taken part in either the murder or the robbery, or in removing the body of the woman from the automobile to the place where it was found. After hearing Birbiglia’s statement, however, Zalenka acknowledged freely his part in the crime.
On the trial of the case, each of the defendants testified that the other alone committed the crime. Bach testified that he had had no knowledge of any intention on the part of the other to c'ommit the crime. Bums was not called as a witness in the case, and did not testify.
If the judge had known, when he was called upon to pass judgment upon the motion for a severance, that the defense of Birbiglia would be antagonistic to that of Zalenka and Burns, he would not have been justified in overruling the motion. There is no case more appropriate for the granting of a severance at the instance of one of two or more codefendants than a case where each defendant attempts to put the blame upon the other. But it does not appear that the judge had any reason to believe, when he was called upon to pass judgment upon the motion for a severance, that such a case would develop. Under these circumstances, the judge did not commit an error in overruling the motion for a severance.
[3] The next bill of exception to be considered is that which was reserved by Birbiglia to the overruling of his motion for a change of venue. Section 1022 of the Revised Stat *31 utes-allows a change of venue when, by reason of prejudice existing in the public mind, or for any other cause, a defendant cannot obtain an impartial trial in the parish in which the indictment is pending. The evidence taken on the trial of the motion for a change of venue in this case shows that the local newspapers gave great publicity to the crime, and to the confessions made by Birbiglia and Zalenka; and that the effect was to create a strong prejudice against them in the public mind, in the sense that the public would be naturally prejudiced against any one who acknowledged having committed such a crime. It appears, too, that the newspapers editorially demanded an immediate trial of the parties accused, and called public attention to the fact that the judge to whom the case was allotted postponed his vacation in order to try the case promptly. But the evidence does not show that the public mind was so inflamed that .the parties accused could not 'obtain an impartial trial in the parish of Orleans. On the contrary, all of the witnesses who testified on that subject, except two, expressed the opinion that the defendant- could obtain . an impartial trial in the parish of Orleans-. We see no reason for reversing the trial judge’s conclusion on that question.
[4] The next bill of exception to be considered is that which was reserved by Birbiglia’s attorney to. the ruling of the court granting a severance as to Burns, on the motion of the district attorney, when the case was called for trial. It is conceded that, as a general rule, the district attorney has control over the docket of criminal cases, and can try separately any one of several defendants under one indictment. The principal objection urged by Birbiglia’s counsel to the severance in this case was that the district attorney had .successfully objected to the -severance asked for-by Burns and Zalenka. It may be that the district, attorney’s reason for opposing the motion of Burns for a severance was that Zalenka had joined in the motion. It may be that the district attorney would not have opposed the motion for a severance on behalf of Burns alone. No authority is cited, -and we know of none, to support the argument that the district attorney was bound to put Burns on trial at the same time when he put Birbiglia and Zalenka on trial merely because the district attorney had opposed the motion of Burns and Zalenka to be tried separately from Birbiglia. The statement which Burns had made to the superintendent of police, four or five hours after the homicide was committed, and which was taken down stenographically and transcribed, is attached to and made part of this bill of exception. Burns was Uie chauffeur who drove the automobile in which the woman was murdered. In his statement to the superintendent of police, he said that Birbiglia had fired the fatal shots, had robbed the woman of her diamonds, and dragged her from the automobile to the swamp beside the canal. There is not an expression in the statement favorable to Birbiglia. As the three parties accused were the only persons who knew what had transpired at the. time and place of the homicide, it is likely that Burns would have deemed it advisable to testify in the case if he had been put. on trial with Birbiglia and Zalenka. The presumption is that, if he had testified, he would have adhered to the statement made to the superintendent o£ police. Such testimony would have been entirely unfavorable to Birbiglia. Under these circumstances, we do not see how the granting of a severance as to Burns was prejudicial to Birbiglia. Our conclusion is that the judge did not commit an error in allowing the severance as to Burns.
[5] There are two bills of exception presenting one and the same question of law. They were reserved to the refusal' of the trial judge to allow the attorney for one of *33 the defendants to ask a juror on his voir dire, in two separate instances, whether he understood and would obey the law that a confession made by one defendant implicating another should be considered as evidence only against the party making the confession, and not against the other party.
The facts as recited in one of the bills are as follows: While C. TI.- McFee was being examined on his voir dire by Zalenka’s attorney, to test McFee’s qualifications^ as a juror, he was asked this question, viz.:
■ “Now, Mr. McFee, under the law, the judge will instruct you that, where two or more persons are jointly indicted, the confessions of one, made after the termination of the murder, implicating others, are admissible only against the person making the confession. You understand that?”
To which McFee answered:
“I get the idea; yes; it’s news to me.”
Zalenka’s attorney then asked McFee:
“Could you eliminate from your mind the confession of one of the defendants so far as it implicates the other defendant, and consider it only as to the one who made it?”
To which McFee answered:
“I think that is a rather difficult thing to do when they are together.”
The attorney then asked McFee:
“Suppose that the court instructed you that that was the law, that any confession one of the defendants may have made implicating the other, you must disregard that confession and apply it only to the one who makes it. Could you totally disregard that as to the other defendant?”
Then the district attorney interposed an objection, thus:
“We object on the ground that counsel should not be permitted to ask hypothetical questions based on what may or may not be offered in evidence.”
The court sustained the objection, saying:
“I think that is a line of examination Which is ■ objectionable, as going into the possible evidence that will be introduced in the 'case, and requires the juror in advance to state what he^ would do in regard to this particular evidence.”
Zalenka’s attorney, addressing the court, asked:
“Does your honor rule that the question should not be asked?”
To which the judge replied: “Yes.” To. which ruling, Zalenka’s attorney reserved a bill of exception, making the entire record in the case a part of his bill.
In the statement per curiam, the judge gives, three reasons for sustaining the district attorney’s objection. The first reason stated is that the judge considered the question confusing. The second reason stated is that the confession.of a defendant, made after the commission of a crime, if made in presence of his codefendant, and if the latter takes part and acquiesces in it, is admissible against both defendants. The third reason stated is that the question was a hypothetical ques: tion, based upon evidence that might possibly be introduced in the case, and required the juror to state in advance what lie would do> in regard to that particular evidence.
The facts stated in the other bill of exception under consideration are as follows: When II. P. Moran was being examined on his voir dire by Zalenka’s attorney, to test Moran’s qualifications as a juror, the attorney asked him this question:
“The judge will instruct yon that, where two or more persons are jointly indicted, the confessions of one, made after the termination of the murder, implicating himself and others, is admissible only against the person making it. Now, could you eliminate from your mind the confession of one of the defendants so far as it implicates the other defendant, and consider it simply and only as to the one. who made it?”
Here the district attorney, without specifying his objection, said:'
“I think that is objectionable.”
To which the judge replied:
“Objection sustained by the court.”
*35 To which ruling Zalenka’s attorney reserved a bill of exception, making the entire record in the case a part of his bill. In the statement per curiam, the judge merely referred to the statement attached to the bill regarding the question asked MeFee.
The majority of the members of this court are of the opinion that, if the ruling complained of in these two bills of exception was erroneous, it was. not of the character to prejudice the defendants.
The writer is of the' opinion that the ruling was wrong in both instances. It does not appear to him that the question was at all confusing, in either instance. It is true, the attorney did not explain, either to Me-Fee or to Moran, that a confession made by one accused person, implicating another, if made in the presence of the other and if acquiesced in by him, is admissible against both parties. But no objection was made on that score. If such objection had been made, the attorney examining the juror would have had the right to give a full explanation, or to have the judge do so. The only objection made by the district attorney to the question propounded to MeFee was that the question was a hypothetical one, based upon facts which might or might not be offered in evidence. Although the district attorney did not urge any particular objection to the question propounded to Moran, it may be assumed that his objection was the same that he had urged to the question propounded to MeFee. As a matter of fact, the question had reference to confessions which the district attorney knew would be offered in evidence against the parties accused. Of course, a defendant on trial for a crime is not permitted to embody in a hypothetical question propounded to a juror on his voir dire all of the facts of the case, and require the juror to say what verdict he would render on proof of such facts. But that was not done in this ease. The ques- ■ tion propounded to MeFee and to Moran was simply whether he understood, and whether he would obey, a principle of law, which was stated to the juror and was appropriate to the facts of the case. It is true, the record does not disclose whether MeFee and Moran, or either of them, served on the jury, or whether either of them was challenged peremptorily. But it is admitted that the de-' fendants in this case exhausted their peremptory challenges before the impaneling of the jury was completed. Hence it makes no difference whether the defendants were compelled to accept MeFee and Moran, or either of them, as jurors, .or were compelled to use a peremptory challenge on either of them. The writer takes into consideration that the right of the defendants, in the impaneling of the jury, was not the right to select any particular juror, but merely the right to reject any disqualified juror. But, as far as the record discloses, the defendants were not permitted to ask any juror on his voir dire whether he understood and would obey the law that a confession made by one of several accused parties, implicating another of the parties, is not admissible in evidence except against the party who made the confession. The writer thinks this question was highly important with regard to the qualifications of MeFee to serve as a juror in this case, because he had acknowledged that the principle of law was news to him, and that it would be rather difficult for him to avoid considering the confession of one of the defendants as evidence against the other. It is true the questions to which these bills of exception refer were asked only by the attorney representing Zalenka, not by the attorney representing Birbiglia, and the bills of exception were reserved only by the attorney for Zalenka. But the writer thinks that, under the judge’s ruling, it would have been a vain and idle ceremony, and might eventually have been regarded as contempt *37 of court, for either of the attorneys to ask each and every juror on his voir dire the same question, on which the judge had put his ban. The writer therefore thinks that the error shown in these two bills of exception is so serious that the verdict and sentence should be set aside and the case remanded for a new trial. The majority opinion, however, is otherwise.
[6] The next two bills of exception to -be considered were reserved by Zalenka’s attorney to the overruling of his challenge of two proposed jurors, on the ground that they had a fixed opinion. Each of the proposed jurors, on his voir dire, said that he had formed an opinion from the newspaper accounts of the homicide. Each of them said that his opinion was so fixed that it would naturally require strong evidence to remove it. But each of them also said that he could and would, if taken on the jury put aside his opinion, and, presuming the defendants to be innocent, be governed entirely by the evidence in the case, and that he would not convict either of the defendants unless the state proved his guilt beyond a reasonable doubt. After a careful reading of the examination of these jurors on their voir dire, our conclusion is that they were not disqualified.
[7] The next three bills of exception to be considered are those which were reserved to the overruling of the defendants’ objections to the introduction in evidence of the confessions made to the superintendent of police. The objections were: (1) That the confessions were not free or voluntary; (2) that the stenographer did not take down all that was said in the confessions; and (3) that the accused were not warned that the confessions might be used in evidence against them.
The evidence shows- conclusively that the confessions were free and voluntary. In fact, there was so little merit in the contention to the contrary that the point has not been seriously argued, either orally or in the briefs filed on behalf of appellants. The evidence also shows conclusively that all that was said in the confession of either of the defendants, and all that was said by Burns in his statement, was recorded accurately by the stenographer. Nothing was omitted that was favorable to either of the parties accused, or that was at all relevant to the homicide. The objection that the parties accused were not warned that their confessions might be used in evidence against'them is without merit. The rule at common law is that a party accused need not be so warned or cautioned, in order that his confession, made out of court and not under oath, may be used in evidence against him. There is no statute to the contrary in this state. See State v. Hogan, 117 La. 863, 42 South. 352.
[8] The next bill of exception to be considered is that which was reserved by Zalenka’s attorney to the overruling of his objection to the district attorney’s reading of the statement which Burns had made to the superintendent of police, a few hours after the homicide, in presence of Birbiglia, but not in the presence of Zalenka. The judge having ruled that the confessions of Birbiglia and Zalenka were admissible, the assistant district attorney proceeded to read the confessions to the jury. He read the confession made by Birbiglia, not in the presence of Burns or Zalenka. He then read the confession made by Zalenka, not in the presence of either Birbiglia or Burns. He then read a further statement made by Birbiglia, not in the presence of either Burns or Zalenka. He then read a further statement made by Zalenka, which was commenced out of the presence of Birbiglia and Burns, but was completed in Birbiglia’s presence. In the latter statement, questions were propounded to Birbiglia and Zalenka, alternately, and they corroborated each other in nearly, if not quite, all of the details of the tragedy. Then Zalenka was taken out of the room, and Burns was *39 brought in. When the assistant district attorney, who was reading the confessions to the jury, came to the stenographer’s note that Zalenka was taken out of the office, and Burns brought in, he called the attention of the court and of the attorneys for the defendants to the fact that Burns’ statements were made only in the presence of Birbiglia, not in the presence of Zalenka; and he inquired whether the attorney for Birbiglia wanted him to read what had been said by Burns and Birbiglia out of the presence of Zalenka. Birbiglia’s attorney replied that he thought it should all be read. Zalenka’s attorney immediately objected to the reading of any statement made by Burns out of the presence of Zalenka. He stated that he represented Burns as well as Zalenka, and that Burns could be called as a witness either for the state or for Birbiglia. The assistant district attorney then announced that he did not intend to call Burns as a witness; Birbiglia’s attorney then stated that ,tbe confessions were being read over his objection, and that he was not insisting that any part should be read, but was merely insisting that, if any part of the confessions should be read, the whole should be read, including the statements that were made by Burns. Thereupon the court ruled that Birbiglia was entitled to have the entire confessions read, including what was said by Burns in Birbiglia’s presence; and the court immediately instructed the jury that whatever was said out of Zalenka’s presence should not he considered as evidence against him. Thereupon Zalenka’s attorney reserved a bill of exception, and requested the court to instruct the jury not to consider as evidence against Zalenka any statement made by Birbiglia out of the presence of Zalenka. The judge then again instructed and cautioned the jury that they should not consider any statement made by any one of the parties accused as evidence against any other of the parties accused, unless such statement was made in the presence of such other party, and was acquiesced in by him. He even cautioned the jury that each one of the parties accused had .the right to remain silent with regard to any statement made by any of the other parties accused, and that the remaining silent of any of the parties accused, when any other of the parties made a statement implicating him, should not he regarded as evidence against him. The statements which were made by Burns to the superintendent of police, first in the presence of Birbiglia and thereafter in the presence of both Birbiglia and Zalenka, are attached to the hill of exception. Burns’ statement corroborated the confession which Birbiglia had made, in all of its gruesome details, and was not nearly so unfavorable to Zalenka as was his own 'confession. Our conclusion is that the judge’s instructions to the jury protected Zalenka against any illegal effect of the statements made by Burns out of the presence of Zalenka. Although we do not quite understand why Birbiglia insisted that the statements made by Burns should be read to the jury, our opinion is that he had a right to have the entire statements read, after the court had ruled that what he had said was admissible.
[9] The next bill to be considered is that which was reserved to the judge’s charge to the jury on the subject of manslaughter. That part of the charge was as follows:
“Section 7S5 of the Revised Statutes provides that there shall be no crime known under the name of murder in the second degree, but on trials for murder the jury may find the prisoner guilty of manslaughter. In other words, in this state, the law authorizes the jury to find a .verdict of manslaughter on all trials for murder, and requires the court to so instruct the jury.
“Now, gentlemen, it is necessary that you should know, in a brief way, what manslaughter is. Manslaughter is where a person, acting under some great provocation, in the heat of blood, on the spur of the moment, unlawfully *41 slays another human being. If you find from the evidence that there was no provocation for the killing, the law of manslaughter would be inapplicable. The theory upon which you find a verdict of manslaughter is that the evidence in the case is applicable to the crime of manslaughter, and if you find from the evidence that there was no provocation for the killing, a verdict of manslaughter would not be responsive to the evidence in the case.”
At this point, Zalenka’s attorney objected, thus:
“I want to reserve a bill of exceptions to,the court’s charge on manslaughter. We contend that, in all murder cases, irrespective of whether there is provocation of not, the jury has a right to bring in a verdict of manslaughter, and that when the court charges the jury that, in a ease where there is no provocation for the crime, they are not justified in bringing in a verdict of manslaughter, it is prejudicial error to the accused.”
Thereupon, the court addressed the jury, thus:
“The court desires to say that it did not instruct the jury that they could not bring in a verdict of manslaughter. On the contrary, it did,' and does now instruct them, that they can return a verdict of manslaughter in all trials for murder. It simply gave the jury instructions on the law of manslaughter, and instructed them, if there was no provocation whatever, then the law of manslaughter would not be applicable. Now, gentlemen, the court further instructs you that, so far as the evidence is concerned, and the weight to be attached to the evidence, and the amount of creditability to be attached to the testimony, that is something exclusively within your province. With the facts of the case you and you alone must deal. The •court has no right to say what has or what has not been proved, or comment in any manner upon the testimony. You not only determine what has or has not been proved, but also the weight to be attached to the testimony of the witnesses. It is the duty of the court to give you the law’, applicable to the evidence, whether that evidence comes from the state or the defense, and you then apply this law, but in doing so you judge for yourselves of w’hat facts have been proven.”
If the judge had said that, if the jury should find from the evidence that there was no provocation for the killing, a verdict of manslaughter would not be responsive to the indictment or charge against the defendants, his instruction would have been erroneous. But what the judge said was that, under such circumstances, a verdict of manslaughter would not be responsive to the evidence in the ease. Our opinion is that the instruction was entirely correct. Although a jury has the authority, or rather the power, under section 785 of the Revised Statutes, to render a verdict of manslaughter in a case where the evidence proves deliberate murder, the jurors ought to be informed and understand that they should not render a verdict of manslaughter in a case of deliberate murder. Section 785 of the Revised Statutes does not mean that jurors may, without violating their oath or their conscience, render a verdict' of manslaughter when the evidence does not justify it, in a prosecution for murder.
The reason why the judge must instruct the jury, in all prosecutions for murder, that they may render a verdict of manslaughter, is that his failure to do so would leave the jury with no other alternative than to convict the defendant of murder or acquit him entirely. It would be the same as for the judge to instruct the jury as to what the evidence in the case was; whereas the judge has no right to comment upon the facts or evidence in the case. In State v. Hicks, 113 La. 779, 37 South. 753, the judge’s charge wuis declared erroneous, because he instructed the jurors that, although they had the power to render a verdict of manslaughter in the case, if they did so, it would be witnout his consent. That was the same as to tell the jurors that, under the evidence, they had no other alternative than to find the defendant guilty of murder or not guilty.
The judge’s charge in this case was in strict accord with the ruling of this court in State v. Clark, 46 La. Ann. 704, 15 South. 83, and in State v. Parks, 115 La. 765, 40 South. *43 39; and our conclusion is that the charge was correct.
The only remaining bills of exception to be considered are those which were reserved to the overruling of the motions for a new trial. The only question presented in the motions, not already disposed of, was whether the verdict should have been set aside because of the alleged statement, made by the juror Surgi, -that he would hang the defendants if he should be taken on the jury. The evidence taken on trial of the motion showed conclusively that the juror did not make any such statement. There is therefore no merit whatever in this bill' of exception; and it has not been seriously argued, either orally or in the briefs filed on behalf of the defendants.
The verdict and sentence against both defendants is affirmed. The right to apply for a rehearing within the time allowed by law is reserved to each of them, because this is the first decree rendered against them by this court, and because some of the questions now decided were not so decided in the original opinion.
PROYOSTY, J., dissents, adhering to the opinion heretofore handed down.