BREAUX, C. J.
The defendant, Fabian F. Bouvy, was indicted by the grand jury of Iberville parish for the alleged murder of Fred. S. Van Ingen in that parish on the 23d day of October, 1908.
He was put on his trial. The jury did not agree. It was discharged and a mistrial entered.
The case was reassigned, and on the 5th day of April, 1909, he was put on his trial a second time and was convicted of manslaughter, and his punishment was assessed by the trial judge at nine years in the penitentiary.
He reserved nine bills of exceptions. Two of these bills present the same points and are argued by appellant as one bill of exceptions.
*1057 Statement of the Case.
The defendant and Van Ingen, the deceased, were acquaintances. They were in the city of Alexandria.
On October 22, 1908, Miss Rhorer also was there, having left Plaquemine that day for Alexandria.
There was a reason for the presence of defendant, as stated by him later.
Between 7., and 8 o’clock in the evening, Van Ingen and Miss Rhorer were married.
Defendant was not at the marriage.
On the following morning, October 23, 190S, the three, the bride, the husband, and the defendant, boarded the train, also an uncle of the bride. The young husbánd was on his way to New Orleans; the bride and her uncle on their way to Plaquemine, her home town.
The defendant did. not at any time in Alexandria or on the way to Plaquemine speak to Mr. or Mrs. Van Ingen.
The bride sat near her husband. On the same side of the coach, and facing Van Ingen, sat the uncle, and on the opposite side of the coach, also facing Van Ingen, about three or four seats away, sat the defendant.
About 4 or o o’clock in the morning, Van Ingen arose to get his satchel, which was behind the seat of the uncle, and returned with it to his seat and was in the act of opening it when the accused drew a pistol and warned the deceased not to open the satchel. The deceased did not heed the warning. Simultaneously the scream of the bride was heard and the report of a pistol. Defendant had fired the fatal shot. The days of Van Ingen were numbered.
2. Bill .of exceptions:
The different grounds of defense are considered in their order.
Absence of a commissioner was the first objection raised. That objection was that no legal and valid meeting of the jury commission was held by reason of the fact that one of the commissioners was not notified to be present at the meeting, and was not present.
This commissioner, Mr. Louis Desobry, was absent from the parish. He was a passenger on a steamboat going up the river to some place in Arkansas.
The facts are that, August 14, 1909, a notice to attend a meeting of the jury commission on the 16th day of September, 1909, was left by the deputy sheriff in the hands of the deputy cashier at the bank of which he was the cashier.
During the commissioner’s absence, there was no one at his residence during the day.
We are of opinion that the quorum by whom the jury was drawn was not illegal for want of the fifth commissioner. There were present four commissioners who had been duly notified by the clerk of the district court.
All needful within the bounds of reason had been done to notify the absent member. It was not known when he would return.
True, all members of the jury commission should be notified to attend the meeting, but failure to notify a member who cannot be found does not have the effect of rendering null and void the jury drawn by the remaining^ commissioners present.
It was decided by this court: If there is a vacancy in the membership so that all cannot be notified, there can be no legal action taken by the meeting of the commissioners. State v. McClendon, 118 La. 792, 43 South. 417.
It does not follow when there is no vacancy, and all has been done possible to notify an absent member, that the proceedings of the commissioners are of no validity.
There should be no vacancy under the terms of the statute. But this does not apply to an absent commissioner. Absence is not vacancy. The statute does not refer to *1059 absence, and we do not think that we should supply it and hold that absence is equivalent to vacancy.
It is within the discretion of the trial judge to make an appointment of a commissioner ; but, if he chooses to retain the services of a commissioner who is temporarily absent, it is his concern. I-Ie may wish to retain a faithful commissioner in that position, although absent when the meeting of the commissioners is held.
We hold that the failure to notify an absent commissioner who cannot be reached is not good ground to set aside the proceedings.
It was not necessary for the other- commissioners to postpone their meeting to an indefinite day in order to await the return of the absent commissioner, particularly as they did not know when he would return. They also had certain rights. One of them was that they could not be held to the necessity of returning from day to day to the courthouse until the return of the absent commissioner or until too late to draw the jury for the jury term.
The defendant was not prejudiced by the absence of the jury commissioner. There is no rule or principle requiring the setting aside of a verdict on the ground urged. It did not work injury.
3. Talesmen:
The defendant filed a motion to quash the venire of talesmen summoned by the sheriff after the regular venire had been exhausted. The trial judge refused to sustain the motion.
The judge has the authority to direct the sheriff to summon talesmen from “among the bystanders, from near the courthouse or at some distance from the courthouse,” to quote from the statute.
The judge gave no particular instruction when he issued the order to summon tales-men. He fixed the number to be summoned at 100.
The sheriff testified that he was prompted by a desire to summon talesmen from among whom there would be found a sufficient number of competent jurors to serve on the jury.
Those who were in or resided near the courthouse during the former trial, it was assumed by him, had heard the witnesses, and possibly the argument of counsel, and had in all probability fixed views in regard to the case.
It is evident that there was no design on the part of the sheriff to violate the statute, and that the defense had no good ground under the law to complain.
There was no violation of the spirit of the statute — not even of its letter.
The statute does not require that the sheriff shall select talesmen from any particular locality. As to him, the law is silent. Of course, he must obey the orders of the judge. If the judge does not issue an order as to, the place to summon talesmen, he may exercise -some discretion. There is no necessity of his selecting talesmen just as he chances to meet them and all whom he happens to ■ meet. If he in good faith summons jurors at some distance from the courthouse for reasons stated, and there is no testimony in the least questioning his motive, the act cannot be construed into grounds sufficient to annul and set aside the finding of the jury. If he summons jurors from one ward instead of another, this of itself gives rise to no good cause of complaint. In the same way he is not obliged to summon every man he meets, provided he is fair and impartial.
The parish of Iberville is large. It has a numerous population. There are, we infer, at least 1,500 citizens from among whom the jurors are selected.
The right of a defendant in a criminal case is to be tried by a jury of his peers, *1061 taken from the body of citizens in the locality in which he resides.
If the sheriff is impartial in summoning the required number, it leaves to defendant scant ground of complaint on that score.
Four of the jurors were selected from the regular venire. There is no complaint as to these four. The remaining eight jurors were also regularly selected.
4. One hundred eleven, instead of one hundred, talesmen:
The next complaint of defendant is that the sheriff was ordered by the trial judge to summon 100 talesmen, but that instead he summoned 111 jurors.
Upon discovering that the number was too large by 11, the sheriff informed the 11 that they were not wanted.
This was not an illegality. It is one of those acts that may happen; an oversight giving rise to no prejudicial consequences.
The judge who was aware of all the facts and circumstances did not sustain the motion of defendant to set aside the jury’s verdict. He did not think that there was good ground to set aside the verdict on that account.
Good faith of the sheriff is one of the essentials that he showed. A larger number than ordered cannot be fatal to the proceedings.
5. Examination on voir dire:
The court refused to allow two challenges for cause and one peremptory challenge by defendant against the qualifications of three talesmen examined upon their voir dire.
The grounds of the challenges for cause were that the jurors on examination on their voir dire said at first that they had a fixed opinion. They did not persist or insist that the opinion was such as to disqualify them from rendering an impartial verdict.
After further examination, the trial judge was of the'opinion that they-were competent.
The selection of jurors and their competency is left largely to the discretion of the trial judge according to the decided trend of authorities upon the subject.
It is urged by the defense that there was marked inconsistency on the part of these jurors, and that they thereby proved themselves incompetent to serve. That at one time they expressed themselves as having a fixed opinion, and very shortly thereafter they were quite willing to be governed by the law and the evidence.
We are all aware that persons frequently change their minds in a very few moments, particularly when called upon to, perform a new duty, to which they are not accustomed.
The decisions sustain the ruling of the trial judge.
There must be a deliberate opinion formed —an opinion that will render a juror incompetent to render an impartial verdict. State v. Brette, 6 La. Ann. 652; State v. Johnson, 33 La. Ann. 889.
6.On cross-examination of a witness:
Another objection was urged by the defense and overruled by the court. It was urged while the defense was cross-examining one of the state’s witnesses. This witness was questioned about the “grip” before mentioned, as to what had become of it. I-Ie was also questioned as to what disposition had been made of the body of Van In'gen; whether members of the. wife’s family called to see it; if they accompanied the body to Alexandria to be buried; if his widow called to see the body.
The facts are: One of the members of the family accompanied the body to Alexandria. The young wife had collapsed. The physician a'dvised her to remain at her home.
■ This evidence was sought, the defense contended, to test the .credibility, memory, and veracity of the witness.
The court ruled that, under the pretext of *1063 testing the credibility, memory, and veracity of the witness, it is not permissible to question him about matters irrelevant and inadmissible.
The trial judge heard all the testimony and held that the testimony on cross-examination-was irrelevant.
There is necessarily here a question of fact. There must be some measure observed in cross-examination. The trial judge has discretion in the matter.
In State v. Kane, 36 La. Ann. 153, t'he court said that the latitude of cross-examination must be limited by the discretion of the judge, and that no precise rule could be laid down to govern his discretion.
This discretion will not be interfered with unless abused. State v. Haab, 105 La. 230, 29 South. 725.
We read the whole testimony excluded. It is in the transcript and is part of the bill of exceptions.
We must say that, after having read it, it did not occur to us that the trial judge erred.
7. Alleged overt act — aggressor—threats:
The court confined the testimony to the proof of facts immediately connected with the homicide.
The defense sought to prove anterior facts and circumstances, such as threats, although the bill of exceptions does not prove that defendant was in imminent danger.
We will here insert our narrative of the facts defendant offered to prove by his own testimony:
We recall from the testimony that there were unfavorable reports regarding Miss Rhorer, to whom both of the young men were paying attentions. The deceased, while under the influence of liquor, said to defendant that he had accomplished the ruin of the daughter, “ravished her” were the words used by Van Ingen, the defendant said. He said that- he admonished the deceased; that the deceased replied that he had had similar experience before and knew how to get out of such trouble. Thereupon the defendant said to him that he would tell the young girl's father. The answer of the deceased was:
“If you do, I will kill you.”
Thereafter the- defendant informed the father, and the latter called in another relative of the family. The defendant also was present. The daughter was -in Plaquemine,' Van Ingen in Alexandria.- The scene changed to Alexandria. Miss Rhorer and the relative, who had been called upon by the father in his distress we infer, repaired to Alexandria. The defendant accompanied them in order to face the deceased. The latter heard of his presence in Alexandria. The result was that Miss Rhorer and Van Ingen were married between 7 and 8 o’clock in the. evening, as before stated.
The details of the shooting have been stated above.
The foregoing is a substantial statement of the testimony which the defendant offered to introduce, -but which the court properly excluded.
The objection of the state was that the testimony was irrelevant and immaterial; the purpose of defendant was to prove that Van Ingen was greatly aroused because of the necessity in which he found himself to marry the girl whom the defendant said he had traduced, and that defendant, in consequence, had a right to expect that his life was in danger when he saw -the deceased in the act of opening his grip in the car, as before mentioned'.
We can only say-that in our opinion the evidence was not admissible. - The belief of defendant that the deceased had formed a design to take his life without an overt act was not admissible. State v. Bradley, 6 La. Ann. 554; State v. Jackson, 33 La. Ann. 1087; State v. Labuzan, 37 La. Ann. 489.
*1065 There must he proof of an overt act in order to admit testimony of threats. State v. Swift, 14 La. Ann. 827.
But granted 'the facts as stated by defendant;' he never at any time appears to.have in the least feared Van Ingen. When Van Ingen made a damaging disclosure to him, he said, “I will inform the father,” and here followed the threat in question by Van Ingen that he would kill him if he did. The defendant did tell the father, as he said he would. When he was requested to go to Alexandria and face Van Ingen and tell him of the ruinous statement, he accompanied the relative to that place.
After the marriage he accepted a pistol and armed himself. He boarded the same train and sat in front facing Van Ingen some three or four seats away. When Van Ingen was in the act of opening his grip, the defendant fired.
We do not find the overt act alleged.
The points are 'brought up together; the testimony of threats and the testimony to prove the overt act and the testimony to prove who was the aggressor.
We take it, although the facts are all related in one bill of exceptions, that an offer was first made to lay a foundation; that is, to prove the alleged overt act.
Considered from that point of view, the testimony was not admissible. There was no proof of an overt act and no sufficient testimony to prove who was the aggressor.
As relates to the alleged aggressor: The homicide occurred on a passenger train within view of witnesses who testified. The attempt of the defendant to Contradict witnesses by his own testimony has every appearance of the irrelevant and immaterial.
The cases of State v. Lindsay, 122 La. 375, 47 South. 687, State v. Rideau, 116 La. 249, 40 South. 691, and State v. Barksdale, 122 La. 790, 48 South. 264, are not in point; the facts of the case in hand are different.
8. Irrelevant and immaterial:
The defense urged that the state, having objected on the sole ground of irrelevancy and immateriality, and the trial judge having excluded the testimony, his ruling must be considered only from the view point of irrelevancy and immateriality ; that it cannot be considered that he excluded the evidence on any other ground.
True, the better practice of the state in prosecuting is to particularize fully the objection raised, in order that the defense may have full notice of the objection to the admissibility of testimony. But this applies to the prosecuting officers. If these officers are not specific enough, or do not urge their points fully, it may give rise to - objection by opposing counsel. The trial judge should pass upon the objection.
We are not informed that any objection was urged at the time.
But the trial judge is not bound by objection of counsel; he may go beyond the objections. He is not to be controlled by either counsel for the state or the defense. It is true, he also should state his reasons for excluding the testimony. But if he does not his failure in this respect is not fatal.
' Let us leave this point and consider for a moment the objection of irrelevancy and immateriality from the view point of the defense, which was that only the issue of irrelevancy and immateriality was before the court. There was no error in this respect even from that point of view. The trial judge had decided to exclude facts not directly connected with the homicide; not to admit anything that he considered too remote to -be admitted. In this respect the general rule is that the court can pass upon the materiality vel non of the testimony, and to him it is left in great part to determine if the testimony is too remote to be admitted, and *1067 if irrelevant and immaterial. State v. Brown, 111 La. 172, 35 South. 501.
In State v. Napoleon, 104 La. 166, 28 South. 972, the court was not impressed 'by the testimony of the defendant, who sought to prove by his own testimony a hostile demonstration. The court in that case thought that the witness in his own behalf had assumed too much of a burden. 1-Iis evidence was characterized as irrelevant, immaterial, and insufficient.
In Steven’s Digest of Law, p. 6, there is the following:
“The court may exclude evidence of facts, though deemed relevant to the issue, if it appears to him to be too remote to be material to all of the circumstances of the case.”
Even if we were to hold with the defense, according to learned counsel, that the question was exclusively whether the testimony was irrelevant and immaterial in the respect stated, the defense would still have to show that the deceased was the aggressor, or that he made a hostile demonstration.
This the defense has failed to do. If it had, it would appear in the bill of exceptions. It was incumbent upon the defense to recite the facts in this respect if the defendant had made a hostile demonstration or had shown himself the aggressor.
The defendant complained because he was not permitted by the court to testify in his own behalf; that after the first trial of his case he had been admitted to bail and was then out on bond.
This learned counsel states was for the purpose of establishing his status as a witness.
The evidence was not admissible for the purpose for which it was tendered.
Besides, doubtless, the jurors must have known that he was out on bond; it was common knowledge in the community.
No attempt was made to impeach the witness in the way that witnesses are impeached. His character for veracity was not at issue.
The objection is without merit.
We leave the record impressed by this case. A young man, barely on the threshold of manhood, is the defendant. The hasty and desperate acts of men sometimes lead to deep misery and untold suffering to themselves and cause distress and sorrow to families and friends.
We have considered the points pressed upon our attention. They lead us to the one conclusion, as follows: That, the law and
the evidence considered, it is ordered, adjudged, and decreed that the sentence and the judgment appealed from be, and the same are hereby, affirmed.