BREAUX, C. J.
The defendant, Meaux, charged with the murder of August Fruge, on the 2d day of October, 1909, was indicted on this charge, was tried and convicted of manslaughter, and sentenced to the maximum penalty of 20 years in the penitentiary.
From the verdict and sentence, he appeals.
His grounds for the reversal of the verdict and sentence are before us in four bills of exceptions.
Bill first was reserved to the ruling of the court in holding that one who is called to the jury box, and who is examined on his voir dire, and who admits that he had heard rumors regarding the facts of the case and had formed an impression, and that if no evidence were offered to remove the impression states he would remain under its influence, is a competent juror. If the facts were exclusively as stated above, the ruling of the trial judge would be erroneous.
But the juror further stated that he had no-bias or prejudice, and that he would give due weight to the evidence and decide impartially after having heard the evidence.
*262 In nearly every case there are rumors in the community in which a homicide has been committed. Sometimes they are of a startling and sensational nature.
One who has heard them and who forms a passing impression cannot be considered as incompetent to serve on the jury after he has satisfied the court that he will be an impartial and good juror.
In order that a juror may be considered incompetent, it must appear that he has a fixed opinion that will preclude his giving an impartial verdict. State v. Johnson, 33 La. Ann. 889.
Very much in this respect is left to the discretion of the trial judge. State v. Bouvy, 124 La. 1054, 50 South. 849; Mars’ Criminal Jurisprudence, § 317, p. 521.
Bill second:
Another point urged by the defense is that another juror said on his voir dire that circumstantial evidence did not, in his judgment, have the weight of positive and direct evidence.
The language of the juror was:
“I would act on circumstantial evidence, but would give more consideration to direct evidence.”
The answer, coming particularly from an average layman, is not such as to render him incompetent.
The average mind, untrained in hearing, weighing, and passing on evidence, is inclined to that conclusion, at first blush particularly.
That which is made evident by direct proof is generally easily understood without the necessity of close attention, while with circumstantial evidence, although as convincing as proof, it frequently requires a process of reasoning which takes time and attention.
An accused, in order to sustain the point now urged, has to inform the judge that circumstantial evidence will be introduced.
This was not done. There was no circumstantial evidence in the ease.
The juror did not say that he would not convict on circumstantial evidence. ■
In that case it would have been necessary for him to show, in order to sustain his point, that there was circumstantial evidence in his case.
Where, however, he swears that he will give attention to the evidence, but would in all probability be more readily influenced by direct evidence, even if there were circumstantial evidence, it would hardly render him incompetent.
Here, we reiterate that there was no circumstantial evidence. It was not made to appear to the satisfaction of the court that such evidence would he introduced. Mars’ Criminal Jurisprudence, § 529.
Learned counsel urged in defense of their client that the trial court erred in stating in the bill of exceptions that there was no circumstantial evidence introduced. Also, in stating that there were 10 witnesses present who saw the killing for which defendant was found guilty, and that it followed that there was no circumstantial evidence and no such evidence required to convict the accused.
It really devolved upon the defendant, in some way, to bring it to the attention of the court that circumstantial evidence would be introduced.
Now, as to the objection to the statement of the judge as not being strictly in accordance with the facts, it does not appear that the court or the clerk were called upon to write out a statement of the facts connected with the point of the defense and upon which the bill was based.
In the absence of all attempt at having all the evidence taken down upon the subject, the statement of the trial court will be considered. Moreover, it is not to be inferred that the court, had there been the least necessity, would have omitted to have the facts taken down.
We have considered the two points carefully and have arrived at the conclusion that *264 there is no room or no justification or anything apparent of record that would justify us in setting aside the verdict and sentence.
Bill third: This bill was abandoned by the defense. It relates to a threat which the state proved the defendant had made against the deceased in the presence of certain witnesses.
We have given some consideration to this point also and agree with learned counsel for the defense that it was part of good judgment not to press the point, as it involved no ground of defense.
By reason of the law and the evidence being in favor of the state and against the defendant, the verdict and sentence are affirmed.