556 So.2d 1323 (1990)
STATE of Louisiana, Plaintiff-Appellee,
v.
Tony CONWAY, Defendant-Appellant.
No. CR89-477.
Court of Appeal of Louisiana, Third Circuit.
February 7, 1990.
*1324 John Crochet, Public Defender Office, Lake Charles, for defendant-appellant.
Beth Conrad, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before DOUCET, KNOLL, and KING, JJ.
KING, Judge.
The issues presented by this appeal are whether or not the trial court erred in failing to sever the trials of two co-defendants and in allowing into evidence the confession of each of the co-defendants; whether the aggravated rape statute, La. R.S. 14:42, is unconstitutionally vague; whether the mandatory penalty provided upon conviction of La.R.S. 14:42 is unconstitutional; whether the jury was improperly selected; and whether there was insufficient evidence to convict defendant of the crime of aggravated rape.
Tony Conway (hereinafter Conway) and a co-defendant, Keith Alexander (hereinafter Alexander), were jointly indicted by a grand jury for the crime of aggravated rape, a violation of La.R.S. 14:42. The defendants were jointly tried before a jury and were each convicted of aggravated rape. After a sentencing hearing, each defendant was given the mandatory sentence of life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence. Each defendant appeals his conviction and sentence based on several assignments of error. We have consolidated the appeals. The issues raised on appeal by defendant, Tony Conway, and co-defendant, Keith Alexander, are virtually the same and, since the law and relevant facts are common to both appeals, our opinion here is equally applicable.[1] We affirm.

*1325 FACTS
On May 16, 1988, the victim, Molly Marie Trahan, voluntarily entered the back seat of a vehicle driven by Alexander and in which Conway was a passenger. The victim entered the car because she casually knew Conway as a friend of a friend and because the defendants told her they could help her locate some marijuana which she was seeking at the request of some friends.
Defendants proceeded to drive to a place in the City of Lake Charles, Louisiana, where they claimed marijuana could be procured. Alexander left the car and returned a few minutes later without any marijuana. The victim then asked defendants to return her to where they had picked her up. Defendants refused and continued to drive around various streets of North Lake Charles. The victim testified that at one point Alexander had his penis out of his pants and requested her to perform fellatio on him. The victim refused and again requested that defendants bring her back to where she had been picked up.
By this time the victim was confused and did not know where she was. Alexander once again stopped the car, exited, and returned with what was allegedly marijuana. The victim was no longer interested and insisted that defendants return her to where they had picked her up.
Defendants continued to drive around North Lake Charles. They proceeded down Opelousas Street, east of Highway 171, and turned onto a dark gravel side road. The victim, being afraid, jumped out of the vehicle and began running away. Alexander backed the vehicle up and stopped in front of the victim. Both defendants exited the car, caught the victim, and cursed and beat her repeatedly. The victim was screaming, and she fell to the ground from the force of the blows.
Alexander held the victim at the upper torso as Conway attempted to remove the victim's pants. The victim began to kick and was still screaming. Alexander continued to hold the victim's arms after she stood up. Conway obtained a towel from the car and Alexander held the towel over the victim's face until she could not breathe. Alexander dropped the towel and put his arm around the victim's neck, again impairing her breathing.
Alexander held the victim as Conway drove the car to the end of the road. Conway then struck the victim several times until she again fell to the ground. Her pants had been removed at this point. The victim testified that Alexander then raped her even though he was having difficulty getting an erection. He remained on top of her for 15 or 20 minutes. During this time Conway was holding the victim's arms.
After Alexander arose from the victim, Conway then got on top of her and raped her. While Conway was raping the victim, Alexander forced his penis in the victim's mouth. The victim turned her face away and Alexander proceeded to ejaculate on her face.
Defendants then gave the victim her clothes and dropped her off near a public telephone.
Defendants were jointly indicted, arraigned, and pled not guilty. Defendants were jointly tried and both were convicted, by a 10-2 vote of the jury, of aggravated rape. Both defendants appeal their convictions and sentence based on numerous assignments of error.

MOTION TO QUASH
Both defendants contend that the trial judge erred in failing to quash the indictment because the aggravated rape statute is unconstitutionally vague.
Conway argues that the statute does not adequately define what the term "participate" in part (A)(5) means. Alexander contends that the meaning of the phrase "physically assist in the commission of such act," found in part (B)(2) is unclear. We find these arguments to lack merit.
La.R.S. 14:42 states in relevant part:
"A. Aggravated rape is a rape committed where the anal or vaginal sexual *1326 intercourse is deemed to be without lawful consent of the victim because it is committed under any one or more of the following circumstances:
* * * * * *
(5) When two or more offenders participate in the act.
B. For purposes of Paragraph (5), `participate' shall mean:
(1) Commit the act of rape.
(2) Physically assist in the commission of such act ...".
Under the "void-for-vagueness" doctrine, a criminal statute must meet two requirements to satisfy due process: (1) adequate notice to individuals that certain contemplated conduct is proscribed; and (2) adequate standards for those charged with determining the guilt or innocence of the accused. State v. David, 468 So.2d 1126 (La.1984), supplemented, 468 So.2d 1133 (La.1985), cert. den., 476 U.S. 1130, 106 S.Ct. 1998, 90 L.Ed.2d 678 (1986); State v. Coleman, 528 So.2d 192 (La.App. 3 Cir.1988), writ den., 533 So.2d 373 (La.1988).
In State v. Union Tank Car Co., 439 So.2d 377 (La.1983), the Louisiana Supreme Court explained these requirements:
"In connection with the requirement of adequate notice, this court has held that a penal statute must describe unlawful conduct with sufficient particularity and clarity that ordinary men of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. State v. Baron, 416 So.2d 537 (La.1982); State v. Dousay, 378 So.2d 414 (La.1979); State v. Payton, 361 So.2d 866 (La.1978). Likewise, the requirement of adequate standards for ascertaining guilty mandates that a criminal statute mark boundaries `sufficiently distinct for judges and juries to administer the law in accordance with the legislative will.' City of Baton Rouge v. Norman, 290 So.2d 865, 868 (La.1974)." State v. Union Tank Car Co., 439 So.2d 377, at pages 384-385 (La.1983).
Again, in State v. Azar, 539 So.2d 1222 (La.1989), the Supreme Court stated:
"The constitutional guarantee that an accused shall be informed of the nature and cause of the accusation against him requires that penal statutes describe unlawful conduct with sufficient particularity and clarity that ordinary persons of reasonable intelligence are capable of discerning its meaning and conforming their conduct thereto. U.S. Const., Amend. XIV, § 1; La. Const. of 1974, Art. 1, §§ 2, 13; Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983); State v. Powell, 515 So.2d 1085 (La.1987); State v. Pierre, 500 So.2d 382 (La.1987). In determining the meaning of a statute and hence its constitutionality, penal statutes must be `given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision.' La.R.S. 14:3; State v. Pierre, supra." State v. Azar, 539 So.2d 1222, at page 1224 (La.1989).
Applying these standards, the definition of participate found in La.R.S. 14:42(A)(5) and (B)(2) offers a clear and definite standard of conduct. The words of the statute, when taken in their usual sense, are readily understandable and capable of discernment when read by an ordinary person of reasonable intelligence.
Counsel for defendant Conway argues in his brief submitted to this court that:
"The only genuine construction that could be placed upon it [La.R.S. 14:42(A)(5) and (B)(2)] leads to such a ludicrous result that the Legislature could not possibly have intended it. Due to the circularity of the definitions of `rape' R.S. 14:41 and `aggravated rape' and `lawful consent' R.S. 14:42, the statute makes punishable by life imprisonment almost any sexual intercourse between consenting (as that word is used generally) adults not married to each other. Rape is anal or vaginal sexual intercourse between persons not married to each other when committed without one (or both) persons's `lawful consent' R.S. 14:41. `When two or more offenders participated in the act' the act `is deemed to be without lawful consent' R.S. 14:42. Undersigned counsel is hard pressed to imagine an act of vaginal or anal sexual *1327 intercourse that does not involve at least two participants."
Counsel's interpretation of the statute is completely unreasonable. Counsel fails to acknowledge the presence of the crucial terms "offenders" which precedes the word "participated" in section (A)(5) of the statute. The statute makes participation by two or more offenders illegal. It does not make the act between two or more participants illegal. The statute is not vague, nor is it overbroad, since its terms narrow its scope to those persons who are perpetrating a crime. Compare State v. Watson, 529 So.2d 94 (La.App. 4 Cir.1988), writ den., 535 So.2d 740 (La.1989), stating that, under La.R.S. 14:42(A)(5) the State had the burden of proving that the defendant raped the victim, not simply that group sex occurred.
The term "participate" and the phrase "physically assist in the commissions of such act," which defines "participate" in part, is succinct, specific, and of such generally accepted meaning as to give adequate notice of the conduct which is prohibited, as well as to give adequate standards for ascertaining guilt under La.R.S. 14:42(A)(5) and (B)(2). For these reasons, we find these assignments of error without merit.

MOTION TO SEVER AND ADMISSIBILITY OF DEFENDANTS' CONFESSIONS
The defendants next contend that the trial court erred in denying a motion to sever their trials. Defendants argue that they were entitled to a severance because their defenses were antagonistic to each other since each of their confessions implicated the other in the rape. Specifically, Alexander states in his confession that he did not enter the victim, whereas Conway's confession states "Keith [Alexander] got on top of her and was raping her." Conway argues that the confessions differ as to the amount and extent of participation of each defendant. Each defendant also contends that the admission of the confession of the other at the trial was error because the admission prevented each defendant from exercising his right to confront and cross-examine a witness against him, under the United States and Louisiana Constitutions.
Each defendant confessed his own involvement in the rape and implicated the other in the rape. The confessions of each only differed as to the extent of participation of each defendant.
We note that there exists an interrelationship between the admissibility of each of the defendants' confessions, the Confrontation Clause of the Federal and State Constitutions, and a trial court's determination on whether to sever a trial on motion of a jointly charged defendant. La.C.Cr.P. Art. 704 states:
"Jointly indicted defendants shall be tried jointly unless:
(1) The state elects to try them separately; or
(2) The court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance."
The State is presumably aware of the law and knows that a joint trial may make the introduction of a co-defendant' confession difficult. If the State fails to move for a severance, it knows its position and makes that choice. When a jointly charged defendant moves for severance, he must show that justice requires the severance, and he carries that burden. The difficulty the State might have at trial in introducing a confession, which implicates a co-defendant in a joint trial, can hardly be seen as prejudicial to the defendants.
In State v. Murphy, 463 So.2d 812 (La. App. 2 Cir.1985), writ den., 468 So.2d 570 (La.1985), the Second Circuit Court of Appeal stated:
"Jointly indicted defendants are to be tried jointly unless the court is satisfied that justice requires a severance. LSA-C.Cr.P. Art. 704; State v. Webb, 424 So.2d 233 (La.1982); State v. Hodge, 457 So.2d 152 (La.App. 2d Cir.1984). An accused is not entitled to a severance as a matter of right, but the decision is one resting in the sound discretion of the trial court. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. State v. Gaskin, *1328 412 So.2d 1007 (La.1982). Co-defendants seeking severance must present evidence of actual antagonism. State v. Dunbar, 356 So.2d 956 (La.1978); State v. Hodge, supra. Additionally, where the ends of justice will best be served by a severance, it should be granted. State v. Webb, supra; State v. Hodge, supra.
The fact that each defendant has pointed a finger at the other does not make defenses automatically antagonistic. Prejudice must be shown if defendants are to receive separate trials. State v. Williams, 416 So.2d 914 (La.1982).
In a similar case the Louisiana Supreme Court in State v. Simmons, 381 So.2d 803 (La.1980), stated:
`While the confessions of these defendants do purport to shift the blame for the shooting to the other, the defenses are not by reasons thereof rendered antagonistic. Both confessions involved both defendants as principals. Only the extent of participation is contradictory. The degree of blame each seeks to cast upon the other does not suffice to warrant severance.'" State v. Murphy, 463 So.2d 812, at page 824 (La.App. 2 Cir.1985), writ den., 468 So.2d 570 (La.1985).
See also, State v. McCarter, 469 So.2d 277, at pages 283-284 (La.App. 2 Cir.1985).
In this case, the defendants' confessions implicated each of them as principals. They are only contradictory as to the extent of each defendants' participation. For this reason, we find that the defendants failed to show any evidence of actual antagonism or prejudice and that the trial court did not abuse its discretion by not severing the trial of each defendant.
Defendants also claim that the admission of each of their confessions at their joint trial denied each of them their right to confront and cross-examine a witness against him, since neither defendant took the stand.
We need not consider whether each defendant's confession was directly admissible against his co-defendant, or whether it denied each the right of cross-examination and confrontation, nor whether the admission of the confessions was harmless error because the record reflects that neither defendant objected to the admission of either confession. In fact, the record shows that both defendants' counsel replied that there was no objection to each defendants' confessions being introduced into evidence and exhibited to the jury. La.C.Cr.P. Art. 841 states in pertinent part:
"An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence...."
No objection was raised by either defendant to the admission of the confessions of either at the time of trial; therefore, in the absence of a contemporaneous objection at time of the trial the defendants may not argue the issue on appeal. They have each waived such objections. La.C.Cr.P. Art. 841; State v. Hebert, 443 So.2d 613 (La. App. 3 Cir.1983), writ den., 444 So.2d 1215 (La.1984).
Defendants also complain that the trial judge did not instruct the jury that each of the defendants' confessions could only be used against him and not against his co-defendant until well after the confessions were admitted and the trial had proceeded to other matters. Again, no contemporaneous objection was made at trial when each of the confessions were admitted, and, therefore, the issue is not properly before this court.
For these reasons, these assignments of error have no merit.

INSUFFICIENCY OF THE EVIDENCE
Conway and Alexander both argue that the evidence against them was insufficient for the jury to find, beyond a reasonable doubt, that they were guilty of aggravated rape.
The victim testified, and identified both defendants as the persons who raped her and testified that each defendant assisted the other in her rape. The medical evidence supports the victim's testimony about being raped. The victim was positive in her identification of both defendants as the ones who raped her, and she further testified that she screamed and fought the *1329 defendants as much as she could. The confessions of the defendants provided the jury with further evidence of the rapes. Under these circumstances, viewing the evidence in the light most favorable to the prosecution, and using the standard for appellate review set forth in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), the jury could easily have found beyond a reasonable doubt each fact necessary for conviction of each defendant of aggravated rape.
For this reason, this assignment of error has no merit.

EXCESSIVENESS OF SENTENCE
Conway and Alexander were both convicted of aggravated rape under La.R.S. 14:42(C). That statute provides:
"Whoever commits the crime of aggravated rape shall be punished by life imprisonment at hard labor without benefit of parole, probation, or suspension of sentence." La.R.S. 14:42(C).
Conway and Alexander contend that, under the circumstances of this case, the mandatory sentence constitutes cruel, unusual, and excessive punishment under the Eighth Amendment of the United States Constitution and Article I § 20 of the 1974 Louisiana Constitution.
In State v. Foley, 456 So.2d 979 (La.1984), the Louisiana Supreme Court expounded at length on the constitutionality of the mandatory sentence found in La.R.S. 14:42(C). The court stated:
"The mandatory life sentence for aggravated rape is a valid exercise of the state legislature's prerogative to determine the length of sentence for crimes classified as felonies. State v. Prestridge, 399 So.2d 564 (La.1981); State v. Farria, 412 So.2d 577 (La.1982); and State v. Talbert, 416 So.2d 97 (La.1982).
* * * * * *
As to the gravity of the offense, the legal definition of aggravated rape in LSA-R.S. 14:42(2) is virtually identical to that of forcible rape. Distinctions are drawn based on the degree of force and the resistance of the victim. The jury determines the permissible punishment by a verdict which fits the crime by assessing the degree of force employed. State v. Willie, 422 So.2d 1128 (La.1982).
* * * * * *

Coker v. Georgia, 433 U.S. 584, 97 S.Ct. 2861, 53 L.Ed.2d 982 (1977), held that a death sentence for rape is excessive punishment under the Eighth Amendment, but did not discount the seriousness of the crime. `It is highly reprehensible both in a moral sense and in its almost total contempt ... of the female victim and for the latter's privilege of choosing those with whom intimate relationships are to be established. Short of homicide, it is the ultimate violation of self.' 433 U.S. at 597 [598], 97 S.Ct. at 2869 [2870], 53 L.Ed.2d at 992, 993. Aggravated rape inflicts mental and psychological damage to its victim and undermines the community sense of security ... Aggravated rape deserves a harsh penalty; it is one of the most violent felonies a person can commit." (Footnotes omitted.) State v. Foley, 456 So.2d 979, at pages 981-983 (La.1984).
In Foley, the court discussed other reasons for the constitutionality of the penalty. We see no point in repeating those reasons here. See State v. Foley, supra. A mandatory sentence of life imprisonment without benefit of parole, probation, or suspension of sentence is not a constitutionally excessive sentence. State v. Brown, 524 So.2d 264 (La.App. 5 Cir.1988), and cases cited therein.
For these reasons, this assignment of error also has no merit.

CONSTITUTIONALITY OF CONVICTION BY A 10-2 JURY VOTE
Defendant Alexander contends that since the mandatory sentence for aggravated rape is life imprisonment without benefit of parole, probation, or suspension of sentence, La.R.S. 14:42, conviction by a 10-2 vote, as in his case, violates the Sixth and Fourteenth Amendments of the United States Constitution. La.C.Cr.P. Art. 782(A) states in pertinent part that:
"... Cases in which punishment is necessarily confinement at hard labor shall be *1330 tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict...."
The Louisiana Supreme Court stated in State v. Belgard, 410 So.2d 720 (La.1982) that:
"In Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) and Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972), the United States Supreme Court upheld the validity of nonunanimous jury verdicts for twelve person juries. This court has consistently held C.Cr.P. 782 does not violate the Sixth or Fourteenth Amendments to the United States Constitution. See State v. Green, 390 So.2d 1253 (La. 1980); State v. Hodges, 349 So.2d 250 (La.1977), cert. den., 434 U.S. 1074, 98 S.Ct. 1262, 55 L.Ed.2d 779 (1978); State v. Morgan, 315 So.2d 632 (La.1975)...." (Footnotes omitted.) State v. Belgard, 410 So.2d 720, at pages 726, 727 (La.1982).
Therefore, this assignment of error lacks merit.

GRAND JURY INDICTMENT
Alexander contends that the indictment was illegal because it was not returned by twelve grand jurors. The record reveals that a grand jury was impaneled on February 17, 1988, consisting of twelve persons; however, at the time the defendants were indicted, only eleven grand jurors were present to return a true bill.
The requirement for an indictment is set out in La.C.Cr.P. Art. 383:
"An indictment is a written accusation of crime made by a grand jury. It must be concurred in by not less than nine of the grand jurors, indorsed `a true bill,' and the indorsement must be signed by the foreman. Indictments shall be returned into the district court in open court; but when an indictment has been returned for an offense which is within the trial jurisdiction of another court in the parish, the indictment may be transferred to that court."
Since concurrence of nine members of the grand jury is sufficient to return an indictment, it is unnecessary that all twelve jurors be present at the time of such finding. State v. Jack, 285 So.2d 204 (La.1973); State v. Scruggs, 165 La. 842, 116 So. 206 (1928); State v. Griggsby, 117 La. 1046, 42 So. 497 (1906). Therefore, this assignment of error lacks merit.

JURY VENIRE
During the course of the voir dire, it became apparent to the trial judge that the venire would be exhausted before a jury could be impaneled. The trial judge, therefore, instructed that civil jurors from another division of the Court, Division E, make up the tales jurors to be subject to voir dire after the exhaustion of the petit venire. Specifically, the trial judge instructed that:
"Judge Planchard's jurors return tomorrow morning at 9:00 o'clock and that's a civil jury. I am doing that on the basis of Section D of Article 785 of the Code of Criminal Procedure."
La.C.Cr.P. Art. 785(D) states:
"In parishes other than Orleans, the judge may order the summoning of tales jurors from among the bystanders or persons in or about the courthouse, in place of the drawing of tales jurors."
The defendants argue that prospective jurors left over from a civil jury venire are not "bystanders" within the meaning of the statute, that La.C.Cr.P. Art. 785(A)[2] is equally inapplicable, and that, therefore, *1331 the jury venire was improper. We agree that Section (A) of La.C.Cr.P. Art. 785 does not apply since a civil jury venire is not a petit jury venire; however, we find that the judge's action was proper under Section (D) of La.C.Cr.P. Art. 785.
In State v. Bouvy, 124 La. 1054, 50 So. 849 (1909), the Supreme Court stated:
"The statute does not require that the sheriff shall select talesmen from any particular locality. As to him, the law is silent. Of course, he must obey the orders of the judge. If the judge does not issue an order as to the place to summon talesmen, he may exercise some discretion." State v. Bouvy, 124 La. 1054, 50 So. 849, at page 851 (1909).
However, there is nothing which prohibits the judge from instructing that the Sheriff obtain tales jurors from a civil venire already present in the courthouse. These jurors are "bystanders or persons in or about the courthouse." La.C.Cr.P. 785(D).
The defendants also contend that, because of the manner in which the civil jury venire was selected, the venire did not adequately represent a cross section of the community. The trial judge ordered that the remaining jurors from the civil jury venire of Division "E" be summoned as tales jurors. There were fourteen. These fourteen names were placed in the jury box. Five names were then randomly selected. Of these five two served on the jury. We note that the names for the civil venire, as it was originally selected, was by random selection. Defendants have presented no evidence that the civil jury venire was improperly selected or that they were prejudiced thereby. These assignments of error, therefore, have no merit.
For the foregoing reasons, defendant's convictions and sentences are affirmed.
AFFIRMED.
NOTES
[1] We render a separate judgment on the appeal of the co-defendant, Keith Alexander, in State v. Alexander, 556 So.2d 1331 (La.App. 3 Cir.1990), bearing Number CR89-478 on the Docket of this Court.
[2] La.C.Cr.P. Art. 785(A) provides:

"A. In a parish other than Orleans having more than one division of court, holding petit jury terms simultaneously, when a petit jury venire of one division is or is about to be exhausted before a trial jury is impaneled, the judge of that division, with the consent of the judge of a division that has not exhausted its petit jury venire, may order the petit jury venire of the latter division or such portion thereof not being used by the latter division, to report to his division to serve as tales jurors. The names of the petit jury veniremen so ordered to report shall be drawn as provided by Article 784 for examination as prospective trial jurors. Those who are impaneled as trial jurors shall serve as though regularly selected as tales jurors. Those who are not selected as trial jurors shall be ordered to report back to the division of court in which they were previously serving as petit jury veniremen."